Filed 6/1/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| YVETTE NOE, et al. | B259570 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC486653) |
| v. | |
| SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent. | |
| LEVY PREMIUM FOODSERVICE LIMITED PARTNERSHIP, et al. | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Mary H. Strobel and John Shepard Wiley, Jr., Judges. Petition for writ of mandate denied.

Feldman Browne Olivares, Lee R. Feldman and Alicia Olivares; Pine & Pine and Norman Pine; Altshuler Berzon, Michael Rubin and Peder J. Thoreen for Petitioners.

No appearance for Respondent.

Davis Wright Tremaine, Camilo Echavarria, Rochelle L. Wilcox, Janet L. Grumer and Evelyn Wang; Horvitz & Levy, John A. Taylor, Jr., Felix Shafir and Eric S. Boorstin for Real Parties in Interest.

Littler Mendelson, Michael J. Lotito and Elizabeth Parry, for U.S. Chamber of Commerce, Calchamber and Civil Justice Association of California as amici curiae on behalf of Real Parties in Interest.

_____

Anschutz Entertainment Group (AEG) contracted with Levy Premium Foods to manage the food and beverage services at several entertainment venues located in southern California. Levy contracted with Canvas Corporation to provide laborers who sold food and beverages at AEG venues. In 2013, several vendors filed a wage and hour class action against AEG, Levy and Canvas for failure to pay minimum wage and willfully misclassifying them as independent contractors in violation of Labor Code section 226.8.

AEG and Levy filed motions for summary judgment arguing in part that they were entitled to summary adjudication of plaintiffs' section 226.8 claim because the undisputed evidence showed Canvas was the entity that had classified the vendors as independent contractors. Although the trial court denied the motions for summary judgment, it agreed that plaintiffs could not pursue a section 226.8 claim against AEG or Levy because neither entity had made the alleged misclassification decision.

Plaintiffs filed a petition for writ of mandate and we issued an order to show cause. In their return to the writ, AEG and Levy argued for the first time that even if the trial court erred in interpreting section 226.8, we should deny the writ because the statute does not provide a private right of action. We now deny plaintiffs' petition. We conclude that, contrary to the trial court's interpretation, section 226.8 is not limited to employers who make the misclassification decision, but also extends to any employer who is aware that a co-employer has willfully misclassified their joint employees and fails to remedy the misclassification. However, we further conclude that section 226.8 cannot be enforced through a direct private action and deny the plaintiffs' writ on that basis.

**FACTUAL AND PROCEDURAL BACKGROUND**

### A. Summary of Plaintiffs' Lawsuit

AEG and its related entities[1] (collectively AEG) own several entertainment venues located throughout southern California, including Staples Center, Home Depot Center, Nokia Center and Citizens Arena. AEG contracted with Levy Premium Foodservice to provide food and beverage services at each venue. Levy then entered into a labor agreement with Mark Saranoff and his affiliated companies Canvas Corporation, Canvas Vending and iCandy (collectively Canvas) to provide vendors who sold food and beverage items to event spectators.

In 2013, several former vendors who had been hired by Canvas to sell food at AEG's venues filed a wage and hour class action against AEG, Levy and Canvas, contending that each defendant qualified as their "joint employer." Plaintiffs alleged numerous violations of the Labor Code, including failure to pay minimum wage (§§ 1194, 1194.2, 1197, 1197.1[2]), failure to pay wages upon termination (Labor Code, §§ 201, 202, 203) and failure to furnish accurate wage statements and maintain accurate payroll records. (§§ 226, 226.3, 1174, 1174.5, 2810.5.)

Plaintiffs also sought recovery under section 226.8, which imposes civil penalties on any person or employer who "engage[s] in" the act of "voluntarily and knowingly misclassifying [an] individual as an independent contractor." (§ 226.8, subds. (a)(1) & (i)(4).) Plaintiffs alleged that each defendant had "misclassified [class members] as 'independent contractors' rather than employees knowing that the [class members] should lawfully be classified as an 'employee.'" Plaintiffs additionally asserted claims under the Labor Code Private Attorneys General Act of 2004 (PAGA) (§§ 2698 *et seq.*) and the

---

[1] AEG's related entities, all of whom are real parties in interest, include Anschutz Southern California Sports Complex, AEG Ontario Arena and LA Arena Company.

[2] Unless otherwise noted, all further statutory citations are to the Labor Code.

3

unfair competition law (Bus. & Prof. Code, § 17200) predicated on the defendants' alleged violations of state and federal labor laws.**3**

### B. AEG and Levy's Motions for Summary Judgment or Summary Adjudication

#### 1. Summary of AEG and Levy's motions for summary judgment

AEG and Levy (collectively defendants) filed motions for summary judgment, or in the alternative summary adjudication, arguing that they were not the plaintiffs' "joint employer" and therefore could not be held liable for any of the Labor Code violations set forth in the complaint. Defendants contended that the undisputed evidence showed Canvas was solely responsible for hiring and paying the plaintiffs, setting their schedules, maintaining their employment records and ensuring they were properly compensated. Defendants further asserted that whatever "limited oversight" they exerted over plaintiffs "fell short of the 'control' required to find a joint employment relationship."

Defendants alternatively argued that "even if the court were to find that disputed issues of material fact exist on the joint employer issue," plaintiffs' claim for civil penalties under section 226.8 "fail[ed]" because the statute only applies to the employer who "actually made the decision to classify workers as independent contractors." Defendants contended that, in this case, the evidence demonstrated the decision to classify plaintiffs as independent contractors and to pay them on "a commission basis only" had been "made exclusively by Canvas."

Defendants raised similar arguments regarding plaintiffs' penalty claims for willfully failing to pay wages due upon termination (§ 203), willfully failing to maintain payroll records (§ 1174.5) and knowingly and intentionally failing to provide itemized wage statements (§ 226, subd. (e).) Specifically, defendants argued that plaintiffs had identified no evidence showing AEG or Levy had acted either willfully or intentionally

---

**3** Plaintiffs alleged several additional claims that are not relevant to this writ proceeding. Our summary of the trial court proceedings omits discussion of these additional claims, which are not at issue.

4

because Canvas was the entity responsible for paying the plaintiffs, preparing their wage statements and maintaining their payroll records.

### 2. *Summary of plaintiffs' opposition*

In their opposition, plaintiffs argued that that the terms of the contractual agreements between AEG, Levy and Canvas demonstrated there were triable issues of fact whether AEG and Levy qualified as the joint employers of the vendors that Canvas had provided to them. Plaintiffs contended the contracts showed AEG and Levy exerted substantial control over the vendors' working conditions, dictating "what [the vendors] s[old], where they [worked], the price [of the products they sold], their appearance, their dress and even what they [could] say when they [we]re selling products."

Plaintiffs also argued there were triable issues of fact whether AEG and Levy were liable for civil penalties under section 226.8. Plaintiffs contended that the statute was not limited to employers who made the actual decision to knowingly misclassify their workers, but rather extended to any employers who had "engaged in" that activity. According to plaintiffs, the evidence showed defendants had "engaged in" the act of willful misclassification because they were aware that their co-employer (Canvas) had improperly classified their joint employees. In support, plaintiffs provided emails in which a Levy human resources representative acknowledged that Canvas only paid the vendors on a commission basis and questioned whether this practice violated wage and hour requirements. Plaintiffs also cited evidence showing that Levy directly hired some of the vendors who sold food at AEG events and classified these workers as employees. Plaintiffs argued that, considered together, this evidence demonstrated Levy knew Canvas had failed to "properly classif[y]" the vendors. They further asserted that knowledge of this information was "imputed" to AEG "because Levy was AEG's agent."

Plaintiffs also argued that even if AEG and Levy were not aware Canvas had misclassified the vendors, they could nonetheless be held liable under section 226.8 based solely on their status as "joint employers." Plaintiffs theorized that the statute imposed a duty on AEG and Levy to ensure all of their employees were properly classified.

5

Plaintiffs raised similar arguments on their claims for penalties under sections 203, 1174.5 and 226, arguing that each statute imposed a duty on every joint employer to ensure its employees were paid for all wages due immediately upon discharge and received accurate, itemized wage statements.

### C. The Trial Court's Ruling

After a hearing, the trial court denied AEG and Levy's motions for summary judgment, but granted summary adjudication on plaintiffs' section 226.8 claim. The trial court concluded there were "triable issues of fact whether Levy and AEG were [plaintiffs'] joint employers" because the contracts between AEG, Levy and Canvas indicated that both defendants exerted control over many aspects of plaintiffs' "working conditions." The court also found there were "triable issues of fact . . . as to whether Levy was AEG's agent," explaining that plaintiffs' evidence suggested AEG had "granted Levy the right to represent AEG in its interactions with food service staff and food service suppliers."

The court ruled that because there were triable issues of fact on the issues of "joint employment" and agency, AEG and Levy were not entitled to judgment on plaintiffs' claim for unpaid minimum wages. The court further concluded that these findings precluded judgment on plaintiffs' claims under sections 203 (failure to pay all wages due upon discharge), 226, subdivision (e) (failure to provide itemized wage statements) and 1174.5 (failure to maintain accurate payroll records), explaining that these "sections . . . . all impose liability" by "virtue of employer status."

However, the court reached a different conclusion regarding plaintiffs' section 226.8 claim. The court observed that "[u]nlike Labor Code section 203, 226 and 1174.5, Labor Code section 226.8 imposes liability not merely by virtue of employer status, but for engaging in a particular activity. . . .[:] 'willful misclassification of an individual as an independent contractor.'" In the court's view, the Legislature's incorporation of the phrase "engage in" indicated the statute was only intended to apply to employers that committed the "affirmative act of misclassification." The court explained that because

6

plaintiffs had conceded Canvas was the entity that "classified [the] vendors as independent contractors," neither AEG nor Levy could be held liable under section 226.8.

The court acknowledged that plaintiffs had "advanced evidence" showing AEG and Levy knew Canvas was "not paying the vendors minimum wage" and that Canvas should have been classifying its workers "as employees, rather than independent contractors," but concluded this evidence did not show AEG or Levy was actually responsible for the initial classification decision.

Plaintiffs filed a petition for writ of mandate seeking an order directing the superior court to set aside the portion of its order granting summary adjudication on the section 226.8 claim. We issued an order to show cause.

## DISCUSSION

### A. Review by Petition for Writ of Mandate Is Appropriate

As a threshold matter, we consider defendants' assertion that plaintiffs have failed to identify any circumstances that warrant writ review. (See generally *United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 74 ["writ review is deemed extraordinary and appellate courts normally are reluctant to grant it"].) Although Code of Civil Procedure section 437c, subdivision (m)(1) specifically permits review of an order granting summary adjudication by way of a petition for writ of mandate, defendants correctly note that "[a]ppealing from a judgment after trial ordinarily provides an adequate remedy at law for a party aggrieved by an order granting summary adjudication." (*Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 949 (*Rehmani*).) However, "[t]he adequacy of an appellate remedy depends on the circumstances of the case, thereby necessarily vesting a large measure of discretion in the appellate court to grant or deny a writ." (*Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 319 (*Fisherman's Wharf*).) In this case, several factors move us to exercise our discretion and consider the merits of the petition at this time.

7

First, "writ review may be proper . . . 'where a pretrial ruling has summarily disposed of a large portion of the case, while several causes of action remain for trial.' [Citation.]." (*Rehmani*, *supra*, 204 Cal.App.4th at pp. 949-950; *Fisherman's Wharf, supra,* 114 Cal.App.4th at p. 319.)  Here, the trial court dismissed plaintiffs' section 226.8 claim while allowing their other wage and hour claims to move forward.  Although the court's order only disposed of a single claim, the potential liability underlying the claim is substantial.  Section 226.8 provides for a penalty of between $5,000 and $15,000 for each "individual" who has been willfully misclassified as an independent contract. (See § 226.8, subd. (b).)  These penalties increase to between $10,000 and $25,000 per individual if the court determines the employer has "engaged in or is engaging in a pattern or practice of" willfully misclassifying its employees.  Plaintiffs estimate that the class consists of approximately 2,100 individuals.  The potential liability on their section 226.8 claim is therefore in the range of $10 million to $50 million.

For many purported class members, the penalty amounts set forth in section 226.8 are likely to exceed the amounts at issue in their individual minimum wage claims. Plaintiffs' evidence indicates that approximately 75% of purported class members worked as vendors at three or fewer AEG events and that 90% of the class worked 10 or fewer events.  For this substantial majority of the putative class members, any recovery on their unpaid minimum wage claims is likely to be less than the penalty that might be recovered under section 226.8.  Given these figures, it is reasonable to assume plaintiffs' section 226.8 claim constitutes a "large portion of the case."  (*Rehmani*, *supra*, 204 Cal.App.4th at pp. 949-950.)

Second, writ review is appropriate to "obviate a duplicative expenditure of resources for the courts and the parties."  (*Rehmani*, *supra*, 204 Cal.App.4th at p. 950.) If plaintiffs were to prevail against AEG and Levy on their surviving wage claims at trial, and we later determined on direct appeal that the trial court improperly dismissed their section 226.8 claim, a second trial would likely be required "on claims that arise out of the same facts and [that] overlap with the issues in those causes of action that have withstood the summary adjudication motion."  (*Ibid.*)  Reviewing the issue now thus

8

serves to avoid the delay and expense of potentially unnecessary litigation and "the attendant waste of judicial resources." (*Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1183 (*Barrett*) [writ review appropriate where it will avoid the possibility of a "second trial" and the "attendant waste of judicial resources"]; *H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1367 ["the delay and expense of trial are valid consideration[s] in deciding whether to grant writ review"].)

Finally, writ review is appropriate because "the petition presents a significant issue of first impression." (*Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1448; *Barrett, supra,* 222 Cal.App.3d at p. 1183 [writ review proper where "the issue presented . . . has never been the subject of a published opinion"].) No published California decision has construed section 226.8, which was enacted to address the substantial economic impacts that employee misclassification was having on low wage workers and the State's tax revenue. (Assem. Com. on Labor and Employment, Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended May 27, 2011, p. 3; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended May 27, 2011, pp. 4-5.) Given the importance of these issues, we believe that writ review is proper.

Defendants, however, argue we should decline writ review because plaintiffs still have "existing claims that seek relief for the same alleged violations of Section 226.8." Specifically, defendants argue that plaintiffs' PAGA claim and their UCL claim (Bus. & Prof. Code, § 17200) are both predicated in part on defendants' alleged violation of section 226.8. (See generally *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143 ["[UCL] 'borrows' violations from other laws by making them independently actionable as unfair competitive practices. [Citation.]"]; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 380 (*Iskanian*) ["'Under [PAGA], an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations'"].) Defendants contend that because the trial court has not yet dismissed the portion of the UCL and PAGA claims that are based on section 226.8, plaintiffs can still

9

"seek the very same penalties they currently seek to recover in . . . an action under section 226.8." Defendants further contend that "[w]hile the trial court may–at some future point–strike plaintiffs' allegations related to Section 226.8 from the [UCL] and [PAGA] causes of action, until then the issue of plaintiffs right to recover under Section 226.8 is simply not ripe for determination. This court should not grant . . . extraordinary relief . . . based on the speculative prospect of what the trial court might do in the future."

There is no indication in the record that defendants have ever moved to strike the portion of the UCL and PAGA claims that are predicated on section 226.8. It is not "speculative" to conclude the court would grant such a motion or that the court will eventually strike such claims. Under the trial court's ruling, defendants cannot be held liable under the UCL or PAGA based on a violation of section 226.8 because the court found no such violation occurred. The mere fact that that the court has not yet formally stricken the relevant portions of the UCL and PAGA claims does not require us to deny writ review.

Moreover, defendants have failed to explain how plaintiffs could recover "the very same penalties they currently seek to recover" through a UCL or PAGA claim. In a suit under the UCL, a private plaintiff's remedies are "limited to injunctive relief and restitution." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*. (1999) 20 Cal.4th 163, 179.) Labor Code penalties are generally not recoverable as a form of UCL restitution. (See *Pineda v. Bank of America* (2010) 50 Cal.4th 1389, 1401-1402 [section 203 penalties not recoverable under the UCL].) Under the PAGA, 75% of any penalty the plaintiffs recover would go to the State. (See *Iskanian, supra,* 59 Cal.4th at p. 380.) Thus, while the UCL and the PAGA claims might provide plaintiffs some form of remedy for a violation of section 226.8, those remedies are qualitatively different than the penalties they might recover in a direct action to enforce section 226.8.

### B. *Standard of Review*

"Code of Civil Procedure section 437c, subdivision (f)(1), allows a party to move for summary adjudication 'as to one or more causes of action within an action . . . if that party contends that the cause of action has no merit. . . .' 'A motion for summary adjudication may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment.' (Code Civ. Proc. § 437c, subd. (f)(2).) Accordingly, '[a] summary adjudication motion is subject to the same rules and procedures as a summary judgment motion.' [Citation.]

"'A defendant making the motion for summary adjudication has the initial burden of showing that the cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. [Citations.] If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers establish a prima facie showing that justifies a judgment in the defendant's favor, the burden then shifts to the plaintiff to make a prima facie showing of the existence of a triable material factual issue.' [Citation.] 'A prima facie showing is one that is sufficient to support the position of the party in question.' [Citation.]

"In reviewing an order granting summary adjudication, 'we apply the same standard of review applicable on appeal from a grant of summary judgment. [Citation.] Accordingly, "'. . . we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] "'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'" [Citation.] We liberally construe the evidence in support of the party opposing summary [adjudication] and resolve doubts concerning the evidence in favor of that party. . . .'"" [Citations.]" (*Rehmani*, *supra*, 204 Cal.App.4th at pp. 950-951.)

### C. *Section 226.8 Is Not Limited to Employers Who Make the Misclassification Decision*

Plaintiffs argue the trial court erred in concluding that section 226.8 only applies to employers who make the actual decision to misclassify employees as independent contractors. The court found that although there were triable issues of fact whether defendants were plaintiffs' joint employers and whether they knew Canvas had misclassified its vendors, defendants could not be held liable under section 226.8 because plaintiffs conceded Canvas had made the classification decision.[4]

Plaintiffs assert that the plain language of section 226.8 demonstrates the Legislature did not intend to limit the statute to employers who actually make the misclassification decision. Rather, according to plaintiffs, the statutory language is broad enough to encompass joint employers who knowingly acquiesce in a co-joint employer's decision to misclassify their joint employees.

Plaintiffs also argue that joint employers may be penalized under section 226.8 even if they had no knowledge that a co-employer misclassified their joint employees. Under this alternative theory, AEG and Levy would be liable under section 226.8 based solely on their status as joint employers of individuals who were willfully misclassified by Canvas.

#### 1. *Section 226.8 is not limited to persons or employers who make the decision to misclassify employees*

The first issue we must decide is whether the trial court erred in concluding that the unlawful conduct described in section 226.8, subdivision (a)(1) is limited to

---

[4] For the purposes of this writ proceeding, neither party has asked this court to review the trial court's finding that disputed issues of material fact exists as to whether: (1) AEG and Levy are plaintiffs' joint employers; (2) Levy had knowledge that Canvas willfully misclassified its vendors; and (3) Levy's knowledge regarding Canvas's misclassification may be properly imputed to AEG under principles of agency. Accordingly, for the purposes of this proceeding, we assume the plaintiffs have introduced sufficient evidence to support a finding that AEG, Levy and Canvas were plaintiffs' joint employers and that AEG and Levy knew Canvas had willfully misclassified their joint employees.

12

employers who make the decision to misclassify workers or whether liability may extend to employers who know that a co-joint employer has willfully misclassified their joint employees and fail to remedy the misclassification.

"""'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.  [Citation.]"  [Citation.]  "'When the language of a statute is clear, we need go no further.'  [Citation.]  But where a statute's terms are unclear or ambiguous, we may 'look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'"  [Citation.]'  [Citation.]"  (*People v. Scott* (2014) 58 Cal.4th 1415, 1421.)

Section 226.8, subdivision (a)(1) states:  "(a) It is unlawful for any person or employer to engage in any of the following activities:  [¶] (1) Willful misclassification of an individual as an independent contractor."[5]  "Willful misclassification" is defined to mean "avoiding employee status for an individual by voluntarily and knowingly misclassifying that individual as an independent contractor."  (§ 226.8, subd. (i)(4).)  The statute therefore makes it unlawful for an employer to "engage in" the act of "voluntarily and knowingly misclassifying [an] individual as an independent contractor."

The trial court found that the inclusion of the words "engage in" demonstrated a legislative intent to limit the statute to employers who made the actual decision to misclassify.  In effect, the court equated the term "engage in" with the term "commit," concluding that subdivision (a)(1) was limited to employers who commit the act of willful misclassification.  The ordinary definitions of "commit" and "engage," however, are not equivalent.  (See *Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 480 ["In

---

**5**      Subdivision (a)(2), which is not at issue here, additionally prohibits employers from "[c]harging an individual who has been willfully misclassified as an independent contractor a fee, or making any deductions from compensation, for any purpose . . . where [those] . . . acts . . . would have violated the law if the individual had not been misclassified."

interpreting the words in a statute, we must give them 'the meaning they bear in ordinary use.' [Citation.]"].) "Commit" is commonly defined to mean "to do, perform." (Webster's 3d New Internat. Dict. (1981) p. 457.) "Engage" has a broader meaning, commonly defined to mean to "involve oneself; to take part in" (Black's Law Dict. (9th ed. 2009) p. 609); or "to participate." (*United States v. Hager* (4th Cir. 2013) 721 F.3d 167, 212-213 ["'Engage' is commonly defined as '[t]o involve oneself or become occupied; participate'"] [citing and quoting The American Heritage Dict. (5th ed. 2011) p. 591].) Thus, based on the terms' ordinary meaning, an individual or entity can "engage" in an act without actually having "committed" that act.

If the Legislature had only intended to penalize employers who made the misclassification decision it could have simply made it unlawful for an employer to willfully misclassify an individual as an independent contractor. Alternatively, it could have made it unlawful to commit the act of willful misclassification. By choosing to use words with a broader connotation—prohibiting employers from "engaging in" the act of willful misclassification—we presume the Legislature intended to penalize a broader class of employers that includes those who, through their acts or omissions, have knowingly participated or involved themselves in the willful misclassification decision. As applicable here, a joint employer who knowingly acquiesces in a co-joint employer's decision to willfully misclassify their joint employees has necessarily "involved" itself in that misclassification decision.

Our conclusion that section 226.8 extends to a joint employer who has knowledge its employees have been misclassified by a co-employer is consistent with the objectives of the statutes. The Senate Floor analyses of Senate Bill 459, which added section 226.8 (see Stats. 2011, ch. 706 (S.B. 459, § 1), makes clear that the statute was intended to act as a broad "deterrent" against the practice of "employee misclassification." (Sen. Rules Com., Office of Sen. Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 459 (2010-2011) as amended September 2, 2011, p. 5.) The Senate Floor analysis explained that increasing "abuse of independent contractor[]" status posed a "serious threat to workers' rights" and had created an "unfair playing field for all the responsible

14

employers who continue to honor their lawful obligation to their employers." (*Ibid*.)
Analyses prepared by the Assembly Committees on Labor and Employment and the
Judiciary expounded on the "societal consequences" of worker "misclassification,"
explaining that the practice had resulted in the widespread denial of "[s]tandard employee
protections" and "loss of state tax income." (Assem. Com. on Labor and Employment,
Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended May 27, 2011, p. 3;
Assem. Com. on Judiciary, Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as
amended May 27, 2011, pp. 4-5.)

Senate Bill 459 also added section 2753 (see Stats. 2011, ch. 706 (S.B. 459, § 2),
which provides that any person who, "for money or other valuable consideration,
knowingly advises an employer to treat an individual as an independent contractor to
avoid employee status for that individual shall be joint and severally liable with the
employer if the individual is found not to be an independent contractor."[6] The legislative
reports explain that the addition of section 2753 was necessary because employers
frequently relied on the services of "[e]mployment consulting firms" to "finds ways to
streamline the business and cut costs." (Assem. Com. on Labor and Employment,
Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended May 27, 2011, p. 5.)
Existing law, however, provided no mechanism "to combat the use of unscrupulous
consultants" who knowingly advise employers to misclassify their employees. (Assem.
Com. on Judiciary, Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended
May 27, 2011, p. 1.)[7]

---

[6]     Section 2753, subdivision (b) exempts from liability any person who provides
such advice to his or her employer and any attorney providing legal advice in the course
of the practice of law.

[7]     Defendants argue that interpreting section 226.8's use of the term "engage in" to
impose liability on all persons or employers who "involve" themselves in the willful
classification decision would render section 2753 superfluous. According to defendants,
under such an interpretation, any outside consultant who knowingly advises a client
employer to misclassify its employees would necessarily be subject to penalties under
section 226.8, thereby rendering section 2753 unnecessary. There are two problems with

15

Considered as a whole, the history of Senate Bill 459 demonstrates the Legislature intended to deter employers and their advisors from knowingly utilizing misclassification to avoid the extra costs and worker protections associated with employee status. Interpreting section 226.8 to exclude employers who know their own employees have been misclassified by a joint employer, but choose not to address the situation, would conflict with the Legislature's broad objectives.

Our interpretation of section 226.8 also comports with the principle "that statutes governing conditions of employment are to be construed broadly in favor of protecting employees." (*Pineda, supra,* 50 Cal.4th at p. 1394 [citing and quoting *Murphy v. Kenneth Cole Productions, Inc*. (2007) 40 Cal.4th 1094, 1103].) Section 226.8 was clearly intended to address the "conditions of employment." As set forth in the legislative history, the primary purpose of the statute was to "protect vulnerable workers" by ensuring they receive the statutory protections that attach as the result of employee status, including (among other things): "minimum wage and overtime protections"; "workers' compensation coverage"; "unemployment insurance"; and "right to family leave." (Sen. Rules Com., Office of Sen. Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 459 (2010-2011) as amended September 2, 2011, p. 4.) Our construction of section 226.8 serves to protect employees by ensuring that employers cannot evade

this argument. First, defendants assume that outside consultants are among the class of "persons or employers" described in subdivision (a) of section 226.8. For the purposes of this writ proceeding, we need not decide, whether the Legislature's use of the phrase "person or employer" in section 226.8, subdivision (a) demonstrates an intent to impose civil penalties on people or entities who are not in an employment relationship with the misclassified worker. However, even if we assume that outside consultants are among the class of "persons or employers" that may be penalized under section 226.8, section 2357 imposes joint liability on consultants for all forms of employer liability resulting from the misclassification (unpaid minimum wage, overtime, etc.). Thus, even if we accept defendants' assertion that a consultant could potentially be penalized directly under section 226.8, section 2753 would extend the liability to other forms of recovery.

16

civil penalties by simply utilizing a lower-tier joint employer to misclassify their joint employees.[8]

> ### 2. *An employer may not be held liable under section 226.8 based solely on the acts of a co-employer*

We next address plaintiffs' assertion that AEG and Levy may be penalized under section 226.8 even if they had no knowledge that Canvas willfully misclassified their joint employees. Plaintiffs essentially contend that a joint employer may be penalized under the statute based solely on the fact that a co-employer willfully misclassified their joint employees. Plaintiffs offer two theories in support of their argument. The first theory is based on the text of section 226.8; the second is based on principles of joint and several liability.

Plaintiffs initially argue that we should broadly interpret section 226.8's prohibition against "engaging in" the act of willful misclassification to apply whenever an employer has "involved themselves in the employment of workers who were [mis]classified as independent contractors." The statute does not, however, impose a penalty on any employer who employs an individual who has been willfully

---

[8] Relying on language in *Hale v. Morgan* (1978) 22 Cal.3d 388, defendants assert that because section 226.8 is "penal" in nature, we must "adopt the narrowest construction . . . to which it is reasonably susceptible in the light of its legislative purpose." Our Supreme Court has repeatedly clarified, however, that "[t]he rule of strict construction of penal statutes 'has generally been applied . . . to criminal statutes, rather than statutes which prescribe only civil monetary penalties.' [Citation.] . . . *Hale* [citation] 'did not purport to alter the general rule that civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose.' [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 92.) The Court has also explained that the relevant language of *Hale* related to "a portion of [a penal] statute that was concerned solely with the manner of calculating the amount of penalty–[it did not relate to] the portion of the statute pertaining to the fact of . . . liability." (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312.) Thus, *Hale* was concerned with "safeguarding against the excessive penalization of those found liable under a civil statute." (*Ibid.*) Accordingly, while the rule in *Hale* might well apply when construing subdivisions (b) and (c) of section 226.8, which describe the amount of the penalty due, the rule does not apply when construing subdivision (a), which describes the prohibited conduct that gives rise to a penalty.

misclassified. Rather, it imposes a civil penalty only when an employer has "engaged in" the act of "voluntarily and knowingly" misclassifying an individual as an independent contractor. As explained above, the phrase "engage in" implies that the employer must have actually involved itself with or participated in the voluntary and knowing misclassification of its employees through some act or omission. Merely employing workers who have been willfully misclassified by a co-employer is, standing alone, insufficient. Simply put, we fail to see how an employer could "engage in" the act of voluntarily and knowingly misclassifying a joint employee without any knowledge that the employee has been misclassified.

Plaintiffs alternatively argue that a joint employer of an individual who has been misclassified by a co-employer is subject to section 226.8 penalties based on principles of agency and joint and several liability. Plaintiffs assert that under California law, "[w]here multiple entities employ a common workforce, they are generally jointly held liable for the . . . unlawful treatment of their employees, just as if they were each other's agents." They further contend if the Legislature had intended to "depart from this usual rule of joint and several liability" it would have added "express language prohibiting joint and several liability for violations of Section 226.8."

We are aware of no authority suggesting that, under California law, joint employers are generally treated "as if they were each other's agents" or that joint employers are normally held jointly liable for Labor Code violation committed by a co-employer.[9] The primary authority on which plaintiffs rely, *Martinez v. Combs* (2010) 49 Cal.4th 35 (*Martinez*), contains no language supporting such a theory. The plaintiffs in *Martinez* brought claims under section 1194 against multiple defendants to recover unpaid wages due under California's minimum wage and overtime requirements. Although the plaintiffs were not hired or paid by the defendants, they argued that the

---

**9**    Federal regulations suggest a different rule may apply under the Fair Labor Standards Act. (See 29 C.F.R. § 791.2 ["if the facts establish that the employee is employed jointly by two or more employers, . . . all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act"].)

defendants qualified as their joint employer based on the amount of control the defendants exerted over them. Defendants argued that that the undisputed facts demonstrated they were not the plaintiffs' employer and therefore could not be held liable for unpaid wages under section 1194. The primary issues the Court addressed were: (1) how the "employment relationship" is defined under California law (see *id.* at p. 51); and (2) whether defendants fell within that definition.

In the course of analyzing those issues, the Court explained that, under section 1194, every employer is liable to its employees for unpaid minimum wage and overtime compensation. (*Martinez, supra,* 49 Cal.4th at p. 49.) Implicit in the court's analysis is a recognition that section 1194 permits an employee with multiple employers to seek recovery of unpaid wages from any of them. Contrary to plaintiffs' suggestion, however, the Court did not conclude that each joint employer is liable for unpaid wages based on principles of agency or joint and several liability. Rather, it concluded that such liability attaches as the result of section 1194, which imposes a duty on every employer to ensure its employees receive minimum wage and overtime compensation. Thus, *Martinez* merely confirms the unremarkable proposition that to establish employer liability for a Labor Code violation, the claimant (or the Labor and Workforce Development Agency (LWDA) in an enforcement action) must demonstrate the employer violated the terms of the specific Labor Code provision at issue.

Other sections of the Labor Code demonstrate that when the Legislature intends to impose joint and several liability for Labor Code violations committed by a third party, it is capable of stating as much. As summarized above, section 2357, added by the same Senate Bill that added section 226.8, provides that any person who, for "money or other valuable consideration," knowingly advises an employer to misclassify an employee "shall be joint and severally liable with the employer if the individual is found not to be an independent contractor." Thus, section 2357 expressly creates joint liability for paid consultants who engage in the proscribed conduct. Similarly, under section 2810.3, which became effective January 1, 2015, any business entity that obtains workers from a labor contractor "shall share with [the] labor contractor all civil legal responsibility and

19

civil liability for" paying the wages of any workers supplied by the labor contractor. Thus, even if the business entity is not the wage claimant's employer, and therefore owes no duty to pay wages under section 1194, the entity is nonetheless liable because section 2810.3 imposes joint liability.

Section 226.8, in contrast, contains no language suggesting that a joint employer shall be jointly liable for, or share in the civil liability of, a co-joint employer's voluntary and knowing misclassification of a joint employee. In the absence of any such language, we cannot presume that the Legislature intended joint and several liability to apply. Instead, we must presume the Legislature intended to impose the civil penalties set forth in subdivisions (b) and (c) on employers who actually "engage in" the voluntary and knowing misclassification of an employee.

In sum, plaintiffs have identified no authority for the proposition that a joint employer may be held liable for Labor Code violations committed by a co-joint employer based on principles of agency or joint and several liability. Rather, whether an employer is liable under the Labor Code depends on the duties imposed under the particular statute at issue.[10] Applying those principles here, if plaintiffs prove AEG and Levy were their joint employers, those defendants may be held liable under section 1194 for any unpaid minimum wage and overtime compensation resulting from plaintiffs' misclassification.

---

[10] As the trial court articulated in its summary adjudication order, many sections of the Labor Code do impose employer liability "by virtue of employer status." For example, section 512 requires every employer to provide its employees meal periods; section 226.7 provides employees a remedy against employers who fail to comply with this obligation. (See § 226.7, subd. (c) ["If an employer fails to provide an employee a meal . . . period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation"].) Because sections 512 and 226.7 impose a duty on every employer to provide meal periods, an employee with multiple employers who is denied a meal period may pursue a section 226.7 claim against any of his or her employers. Section 226.8, by contrast, prohibits an employer from "engag[ing] in" the act of "willful misclassification," which is specifically defined as the "voluntar[y] and knowing[] misclassif[ication]" of an individual to avoid employee status. The statute therefore requires the claimant to demonstrate not only that he or she was misclassified, but also that the particular employer who is being sued actually engaged in the act of voluntarily and knowingly misclassifying the claimant.

20

(See *Martinez, supra,* 49 Cal.4th at pp. 49-50.) To obtain civil penalties under section 226.8, however, plaintiffs must demonstrate not only that AEG and Levy were joint employers, but also that, as set forth in this opinion, they each engaged in the act of voluntarily and knowingly misclassifying the plaintiffs. The mere fact that Canvas engaged in such conduct is insufficient.

Based on our interpretation of section 226.8, subdivision (a)(1), we conclude the trial court did err in granting defendants summary adjudication based solely on plaintiffs' concession that Canvas was the employer that actually misclassified the putative class members as independent contractors. We reject, however, plaintiffs' further suggestion that AEG and Levy may be subject to section 226.8 penalties based solely on their status as joint employers of workers who were misclassified by a co-employer.

### D.  Section 226.8 Does Not Provide a Private Right of Action

AEG and Levy argue that even if we conclude the trial court's summary adjudication order was predicated on an erroneous interpretation of section 226.8, we should nonetheless deny the plaintiffs' petition based on an alternative ground that was not raised in the trial court proceedings:  that section 226.8 does not provide a private right of action to enforce the statute through a direct claim.[11]

Plaintiffs' complaint asserts two different causes of action that seek to enforce section 226.8. Plaintiffs' ninth cause of action, on which the court entered summary

---

[11]    In their return to our alternative writ, defendants argue that we should deny the writ because even if we were to "direct the trial court to reverse its summary adjudication ruling" based on its erroneous interpretation of section 226.8, plaintiffs' claim "would still fail as a matter of law . . . on the ground [they] have no private right of action." Defendants essentially contend that we should summarily deny the petition regardless of whether the court misinterpreted section 226.8 because there is no private right of action under the statute. We cannot presume that section 226.8 does not provide a private cause of action merely because the defendants make the assertion. Instead, we must determine whether this is an alternative legal basis that supports the trial court's summary adjudication order. (See *Folberg v. Clara G. R. Kinney Co*. (1980) 104 Cal.App.3d 136, 140 (*Folberg*) [appellate court will sustain a summary judgment if the trial court's decision is "'right upon any theory of the law applicable to the case, . . . regardless of the considerations which may have moved the trial court to its conclusion'"].)

adjudication, alleges a direct claim under section 226.8 seeking to collect a penalty on behalf of each misclassified employee. Plaintiffs' fifteenth cause of action, on which the court did not enter judgment, alleges a representative PAGA claim seeking to collect penalties on behalf of all aggrieved employees under section 226.8 and numerous other Labor Code provisions. (See generally *Caliber Bodyworks v. Superior Court* (2005) 134 Cal.App.4th 365, 374 (*Caliber*) [PAGA "allow[s] aggrieved employees . . . to bring a civil action to collect civil penalties for Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies"].) The defendants do not dispute that plaintiffs are permitted to enforce section 226.8 through a PAGA claim. They argue, however, that we should affirm the trial court's order granting summary adjudication of plaintiffs' ninth cause of action because section 226.8 does not authorize a direct private right of action.

Preliminarily, we must determine whether it is proper to consider this issue in light of defendants' failure to raise it below. We generally will not consider an argument "raised in an appeal from a grant of summary judgment . . . if it was not raised below and requires consideration of new factual questions.' [Citation.]" (*Winchester Mystery House, LLC v. Global Asylum, Inc*. (2012) 210 Cal.App.4th 579, 594 (*Winchester*); *Uriarte v. United States Pipe & Foundry Co*. (1996) 51 Cal.App.4th 780, 790-791; *Folberg, supra,* 104 Cal.App.3d at p. 140.) We may, however, consider a newly-raised issue "when [it] involves purely a legal question which rests on an uncontraverted record which could not have been altered by the presentation of additional evidence." (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501; see also *Moerman v. State of California* (1993) 17 Cal.App.4th 452, 460 [when reviewing summary judgment ruling, appellate court may "consider an issue not raised below when it involves purely a question of law"]; *Winchester, supra,* 210 Cal.App.4th at p. 594 [on review of summary judgment motion, court may consider newly-raised issue involving "a question of law on undisputed facts"].) Even under such circumstances, we will not consider the issue unless "the opposing party has notice of and an opportunity to respond to that ground." (*Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 860; see also *Juge v.*

*County of Sacramento* (1993) 12 Cal.App.4th 59, 63-64, 69-70; Code of Civ. Proc., § 437c, subd. (m)(2).**12**)

Whether section 226.8 provides plaintiffs a private right of action is a pure question of law that does not turn on disputed facts or evidence. (*Shamsian v. Department of Conservation* (2006) 136 Cal.App.4th 621, 631 ["whether [statute] . . . supports a private right of action is a question of statutory interpretation and of law for the court"].) Moreover, this issue of law has been fully-briefed by both parties.

### 1. Summary of applicable legal principles

"A violation of a state statute does not necessarily give rise to a private cause of action. [Citation.] Instead, whether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute. [Citations.] Such legislative intent, if any, is revealed through the language of the statute and its legislative history." (*Lu v. Hawaiian Gardens Casino, Inc*. (2010) 50 Cal.4th 592, 596 (*Lu*).) "[W]e consider the statute's language first, as it is the best indicator of whether a private right to sue exists." (*Id*. at p. 603.) "A statute may contain "'clear, understandable, unmistakable terms,'" which strongly and directly indicate that the Legislature intended to create a private cause of action. [Citation.] For instance, the statute may expressly state that a person has or is liable [*sic*] for a cause of action for a particular violation. [Citations.] Or, more commonly, a statute may refer to a remedy or

**12**    Code of Civil Procedure section 437c, subdivision (m)(2) prohibits an appellate court from affirming a grant of summary adjudication on a ground not relied on by the trial court unless the appellate court permits the parties "an opportunity to present their views on the issue by submitting supplemental briefing," which "may include an argument that additional evidence relating to that ground exists, but that the party has not had an adequate opportunity to present the evidence or to conduct discovery on the issue." Supplemental briefing is generally not required under subdivision (m)(2) when the issue is "purely a legal one" and both parties have already briefed the issue. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39 [supplemental briefing unnecessary under subdivision (m)(2) where both parties "directly addressed the issue in their briefs"]; see also *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147, fn. 7 [supplemental briefing unnecessary where issue has "already been briefed on appeal"].)

23

means of enforcing its substantive provisions, i.e., by way of an action.  [Citations.].”  (*Id*. at p. 597.)  If the statute “does not include explicit language regarding a private cause of action, [but contains] provisions [that] create some ambiguity, [courts may] look . . . to legislative history for greater insight.”  (*Id*. at p. 598.)

“It is well settled that there is a private right of action to enforce a statute ‘only if the statutory language or legislative history affirmatively indicates such an intent.  [Citations.]  That intent need not necessarily be expressed explicitly, but if not it must be strongly implied.  [Citations.]”  (*Thurman v. Bayshore Transit Management, Inc*. (2012) 203 Cal.App.4th 1112, 1131-1132 (*Thurman*);  *Lu, supra,* 50 Cal.4th at p. 601, fn. 6 [private right of action will not be found unless the Legislature has “clearly manifest[ed] an intent to create a private cause of action under a statute”].)  “Particularly when regulatory statutes provide a comprehensive scheme for enforcement by an administrative agency, the courts ordinarily conclude that the Legislature intended the administrative remedy to be exclusive unless the statutory language or legislative history clearly indicates an intent to create a private right of action.’  [Citation.]”  (*Thurman, supra,* 203 Cal.App.4th at p. 1132.)

> 2. *Section 226.8 contains no language manifesting a legislative intent to create a private right of action*

Section 226.8 contains no language indicating that the Legislature intended to create a private right of action to enforce or collect the penalties set forth in the statute. Subdivision (a) describes the prohibited conduct, making it unlawful for an employer to engage in the act of willful misclassification.  Subdivision (b) provides that “[i]f the [LWDA] or a court determines a person or employer has engaged” in willful misclassification, “the person or employer shall be subject to a civil penalty of not less than [$5,000] and not more than [$15,000] for each violation, in addition to any other penalties or fines permitted by law.”  Subdivision (c) contains identical language, but increases penalties to not less than $10,000 and not more than $25,000 for each violation

24

if the LWDA or a court issues a determination the "employer has engaged in or is engaging in a pattern or practice of these violations."

Subdivision (g)(3) states that the "Labor Commissioner" (statutorily defined as the chief of the LWDA's Division of Labor Standards Enforcement (DLSE)[13]) may enforce the section "pursuant to section 98 or civil suit." If the Commissioner elects to proceed under section 98 and "determines that a person or employer has violated subdivision (a), the . . . Commissioner may issue a citation to assess penalties set forth in subdivisions (b) and (c) in addition to any other penalties or damages that are otherwise available at law." (§ 226.8, subd. (g)(2).) Subdivision (j) clarifies that "Nothing in this section is intended to limit any rights or remedies otherwise available at law."

Thus, the only specific language regarding enforcement of section 226.8 appears in subdivision (g), which authorizes the Labor Commissioner to enforce the statute "pursuant to Section 98 or in a civil suit." If the Commissioner proceeds under section 98 and determines a violation has occurred, he or she "may issue a citation to assess penalties." (§ 226.8, subd. (g)(2).) If the Commissioner elects to enforce the statue "in a civil suit" (§ 226.8, subd. (g)(3)), the penalties would be assessed through a court order. There is no language suggesting a private plaintiff may bring a direct action under section 226.8 action or that a misclassified employee may collect the penalties described within the statute.

This court has previously observed that the Legislature's use of the term "civil penalty," unaccompanied by any language signifying that the penalty is to be paid to the aggrieved employee, generally indicates that the penalties may only be enforced by the State's labor law enforcement agencies or through a PAGA action. In *Caliber, supra,* 134 Cal.App.4th 365, plaintiffs brought an action against their employer seeking to collect penalties for numerous violations of the Labor Code. Defendant argued that all of the penalty claims should be dismissed because plaintiffs had failed to allege compliance

---

**13**    "Labor Commissioner" is defined under the Labor Code as the chief of the DLSE. (§ 21.)  The DLSE is a division of the Department of Industrial Relations (§ 79), which resides in the LWDA.  (§ 50.)

with PAGA's pre-filing notice and exhaustion requirements (see § 2699.3). Plaintiffs, however, argued that none of their claims were subject to the notice procedures because they had not asserted a PAGA claim, arguing that "nothing in the Act . . . restricted the right of an employee to remedy wage-and hour violations of the Labor Code through a . . . lawsuit against his or her employer when the employee is not suing under the Act itself." (*Caliber, supra,* 134 Cal.App.4th at p. 377.)

In our analysis, we explained that the Labor Code generally provides two distinct categories of "penalties": "statutory penalties . . . for employer wage-and-hour violations [that are] recoverable directly by employees" and "'civil penalties" that are "enforceable only by the State's labor law enforcement agencies" or through a PAGA action. (*Caliber, supra,* 134 Cal.App.4th at p. 378.) We concluded that PAGA's pre-filing procedural requirements only apply when the claimant is attempting "to collect civil penalties for Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies" (*id.* at p. 374); the pre-filing requirements do not apply to claims for "statutory penalties" that were "recoverable directly by employees" prior to PAGA's enactment. (*Id.* at p. 377)

We then assessed each claim to determine whether it sought a "statutory penalty" directly recoverable by an employee (which did not require PAGA compliance) or a "civil penalty" previously enforceable only by the State's labor law enforcement agencies (which did require PAGA compliance). For example, we found plaintiffs were required to comply with PAGA to collect penalties under section 1174.5, which states that any employer "who willfully fails to maintain the records required [under section 1174] . . . . shall be subject to a civil penalty of [$500]." In contrast, we found plaintiff was not required to comply with PAGA to collect "statutory penalties" under section 203, which states that if an employer willfully fails to pay an employee all wages due upon his or her discharge, the employee's wages "shall continue [to him or her] as a penalty" for up to 30 days.

*Caliber* demonstrates that where, as here, a Labor Code provision provides for a "civil penalty" and contains no language suggesting the penalty is recoverable directly by

26

employees, no private right of action is available other than through a PAGA claim. That is the situation here. Section 226.8 repeatedly refers to a "civil penalty" and includes no language permitting a misclassified employee to collect the penalty. Indeed, the statute includes specific language indicating that the provision is to be enforced by the "Labor Commissioner." This language precludes a direct private right of action.

### 3. *Section 218 does not establish a private right of action to enforce section 226.8*

Plaintiffs contend that even if we conclude section 226.8 lacks any language demonstrating a legislative intent to establish a private right of action, Labor Code section 218 provides an independent basis for private enforcement of section 226.8. Section 218 states, in relevant part: "[N]othing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article." Plaintiffs contend this section provides a private right of action for any penalty set forth in the article in which section 218 appears—Article 1, Chapter 1, Part 1, of Division 2 of the Labor Code (§§ 200-244.) They further contend that because section 226.8 falls within that article, section 218 necessarily provides a private right of action to enforce the statute.

Section 218 does not, however, create a private right of action for every penalty set forth in sections 200-244. Rather, it provides a wage claimant a private right of action for any penalty "due him under th[e] article." As stated in *Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, "section 218 empower[s] a wage claimant to sue directly to recover any wages or penalties personally due the employee under Article 1." (*Id*. at p. 337.) In other words, the statute only establishes a private right of action to enforce Labor Code provisions within the article that provide for a penalty payable to the affected employee. (See, e.g., § 203 [employer who willfully fails to pay all wages due upon discharge must pay the employee, in addition to the unpaid wages, a penalty equal to the employee's daily wages for each day the wages are unpaid]; § 226, subd. (e) [employee "is entitled to recover" a statutory penalty if an employer knowingly and intentionally fails to comply with itemized wage statement requirements]; § 226.7, subd. (c) [employer

27

who fails to provide an employee a required meal or rest period "shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided"].)  The civil penalties in section 226.8, however, are not payable to the misclassified employee.  Thus, section 218 does not establish a private right of action to enforce it.[14]

---

[14]    Plaintiffs also contend that the Legislature's intent to establish a private right of action is demonstrated by a paragraph in the Senate Judiciary Committee's analysis of Senate Bill 459 that states: "The bill would also provide misclassified workers a private right of action if they suffer actual harm." (Senate Jud. Com., Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended March 23, 2011, at p. 7.) "[R]esort to a statute's legislative history is appropriate only if the statute is reasonably subject to more than one interpretation or is otherwise ambiguous." (*Ste. Marie v. Riverside County Regional Park and Open-Space District* (2009) 46 Cal.4th 282, 290.)  Because plaintiffs have pointed to no statutory language that could be reasonably interpreted to provide a private right of action, we need not consider extrinsic materials.  (*People v. Statum* (2002) 28 Cal.4th 682, 690 [courts "need no[t] refer to extrinsic materials" when a proposed interpretation is "not supported by [statute's] plain language"].)

In any event, the Senate Judiciary Committee's statements is not, standing alone, sufficient to establish a private right of action.  Although earlier drafts of section 226.8, proposed during a prior session, did include an explicit private right of action for employees who had suffered actual harm (see Sen. Bill No. 622 (2007-2008 Reg. Sess.) as amended May 3, 2007, § 1 ["nothing in this section shall prohibit an employee who has suffered actual harm . . . from bringing an action on behalf of himself . . . to recover the penalties established in subdivision (b) and (c)"]), the version of section 226.8 set forth in Senate Bill 459 contains no language that could be reasonably  interpreted in the manner suggested by the Senate Judiciary Committee's analysis.  "[C]ommittee reports, often drafted by unelected staffers, cannot alter a statute's plain language.  [Citation.] '[The statute's] actually language prevails, not the Committee's report.'  [Citation.]" (*People v. Johnson* (2015) 60 Cal.4th 966, 992.)

The Senate Judiciary Committee's analysis also conflicts with the remainder of the legislative history.  Six other legislative committees prepared an analysis of Senate Bill 459; none of those analyses contain any indication that section 226.8 was intended to provide a private cause of action.  (See Sen. Rules Com., Office of Sen. Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended September 2, 2011; Sen. Com. on Labor and Industrial Relations, Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended March 23, 2011; Sen. Appropriations Com., Fiscal Summary of Senate Bill No. 459 (2010-2011 Reg. Sess.), as amended March 23,

28

Because section 226.8 does not provide a private right of action, we affirm the trial court's grant of summary adjudication on plaintiffs' ninth cause of action, which asserts a direct claim under section 226.8 seeking to collect a civil penalty on behalf of each "misclassified employee."[15]

## DISPOSITION

The petition is denied. The parties shall bear their own costs on the petition.


ZELON, J.


We concur:


PERLUSS, P. J.


IWASAKI, J.[*]

---

2011 ; Assem. Com. on Labor and Employment, Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended May 27, 2011; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended May 27, 2011; Assem. Com. on Appropriations, Analysis of Sen. Bill No. 459 (2010-2011 Reg. Sess.), as amended August 15, 2011.)

[15]     Nothing in our analysis precludes plaintiffs from pursuing enforcement of section 226.8 through their PAGA claim.

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.