Filed 4/13/16  Gibson v. City of San Diego CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DENNIS GIBSON, | D066507 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00097458-CU-BC-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

Law Office of Michael A. Conger and Michael A. Conger for Plaintiff and Appellant.

Jan I. Goldsmith, City Attorney, and Walter C. Chung, Deputy City Attorney, for Defendant and Respondent.

# I.

# INTRODUCTION

Dennis Gibson brought this action against the City of San Diego (the City) seeking to invalidate an ordinance passed in 2011 that Gibson claimed "substantially and materially decreased" a retiree health benefit that he would have been eligible to receive from the City upon his retirement. The trial court sustained the City's demurrer to Gibson's claims for declaratory relief, writ of mandate, and breach of express contract, and granted Gibson leave to amend to state a claim for breach of implied contract. After Gibson filed an amended complaint alleging a single cause of action for breach of implied contract, the City filed a motion for summary judgment, which the trial court granted. On appeal, Gibson claims that the trial court erred in sustaining the City's demurrer to the claims in his original complaint and in granting the City's motion for summary judgment.

We conclude that the trial court properly granted summary judgment for the City on Gibson's first amended complaint because the legislation that forms the basis of Gibson's implied contract claim was repealed in 1992, and Gibson waived any right to enforce the alleged implied contractual obligations contained in the original legislation by failing to seek enforcement of such purported obligations for a period of approximately twenty years after the repeal. We further conclude that the trial court properly sustained

the City's demurrer to Gibson's original complaint because none of Gibson's claims properly stated a cause of action.[1]  Accordingly, we affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A.    *Factual background*

Gibson began working full-time for the City in 1986.  According to Gibson, at the time he began his employment with the City, he and the City entered into a contract pursuant to which, "if Gibson worked for the City for at least 20 years, after he retired the City would (1) provide him with the same health insurance coverage the City provided to its active employees, and (2) the City would pay the premiums for that health insurance."  Gibson contended that these contractual promises were contained in resolutions and an ordinance adopted by the City in the early 1980's.

Gibson left City employment in 2006.  In 2011, before Gibson had reached retirement age, the City adopted an ordinance that Gibson contends, "substantially and materially decreased" the retiree health benefit that the City had promised him.  Gibson's action challenges the legality of the City's 2011 ordinance.

---

[1]    In light of our affirmance of the trial court's order granting the City's motion for summary judgment and the court's order sustaining the City's demurrer on the grounds stated in the text, we need not consider any of the other grounds for affirmance that the City offers in its briefing.

[2]    Because this appeal involves review of orders pertaining to two different complaints (an order sustaining a demurrer to the original complaint and an order granting summary judgment on Gibson's first amended complaint), we provide a brief summary of factual and procedural background of the entire action in this section.  We discuss in detail the factual and procedural background relevant to the orders under review in parts III.A and B., *post*.

B.       *Procedural background*

In 2012, Gibson filed a putative class action complaint against the City that contained three causes of action:  declaratory relief, writ of mandate, and breach of contract.[3]  The City demurred to all of the claims in the complaint.  After briefing, the trial court held a hearing on the demurrer and then took the matter under submission. While the trial court had the matter under submission, Gibson submitted a written request seeking leave to amend his complaint to state causes of action for promissory estoppel, equitable estoppel, and breach of implied contract.  The trial court sustained the City's demurrer to all of Gibson's claims in the complaint, but granted Gibson leave to amend to state a claim for breach of implied contract.  The court denied without prejudice Gibson's request for leave to amend his complaint to state claims for promissory estoppel and equitable estoppel.

Gibson filed a first amended complaint, stating a single cause of action for breach of implied contract.  The City filed a demurrer to the complaint, and the trial court overruled the demurrer.

The City answered Gibson's first amended complaint and then filed an amended motion for summary judgment (motion for summary judgment).

After briefing and a hearing, the trial court entered an order granting the City's motion for summary judgment.  The court subsequently entered judgment in favor of the City.

---

3       According to Gibson's brief, "he never sought class certification and the class was never certified by the trial court."

Gibson timely filed a notice of appeal.

## III.

## DISCUSSION

A.   *The trial court did not err in granting the City's motion for summary judgment*[4]

Gibson claims that the trial court erred in granting the City's motion for summary judgment.

1.   *Factual and procedural background*

a.   *Gibson's first amended complaint*

In his first amended complaint, Gibson alleged that the City provides a "Retiree Health Benefit" to reimburse retired City employees for the cost of health insurance premiums that they pay after retirement.  Gibson further alleged that the City created the Retiree Health Benefit in 1982, "when the City desired to have its employees withdraw from the Social Security System."  Gibson also alleged that in order to induce its employees to vote in favor of the withdrawal, the City "offered its employees lifetime retiree health insurance, i.e., the Retiree Health Benefit."  According to Gibson, City employees relied on this promise of lifetime health insurance in approving the City's withdrawal from the Social Security system.

---

[4]   We address the summary judgment ruling first because we conclude in part III.B., *post*, that any error in sustaining the City's demurrer as to Gibson's declaratory relief and mandamus causes of action without leave to amend was harmless in light of our conclusion affirming the trial court's order granting the City's motion for summary judgment on Gibson's breach of implied contract claim.  (See fn. 18, *post*.)

5

Gibson's first amended complaint contains a single cause of action for breach of implied contract. Gibson alleged the existence of an implied contract containing the following terms:

> "Gibson and those similarly situated entered into an implied contract with the City under which, according to its legal intendment and effect, the City agreed:
>
> (a) to provide Gibson and those similarly situated, after retirement from the City, medical insurance on the same basis as then provided to the City's active employees (i.e., Resolution Number R-255610, adopted January 4, 1982 [(the 1982 Resolution)], agreeing to 'establish a City-Sponsored Group Health Insurance Plan for eligible retirees, providing the same choice of program coverage as offered active City employees' and '[t]hat the program of City-Sponsored Retiree Health Insurance shall be made available to eligible retirees, commencing January 8, 1982[']);
>
> (b) to pay for the cost of the coverage provided (i.e. [the 1982 Resolution], agreeing 'to cause premiums for said insurance to be paid out of the City-Sponsored Retiree Health Insurance Plan Fund' and Ordinance O-15758 [(the 1982 Ordinance)] 'Retiree premiums shall be paid by the City'); and
>
> (c) Memorandum to all City employees from the City manager dated November 20, 1981: '[r]etired employees will be included in the City health plans. The City will pay the premiums.' "

Gibson further alleged that the City adopted an ordinance in 2011, O-20105 (the 2011 Ordinance), that "substantially and materially decreased" the retiree health benefit. Gibson alleged that the 2011 Ordinance constituted a "repudiation and anticipatory breach of the parties' implied contract."

b.    *The City's motion for summary judgment*

In a brief in support of its motion for summary judgment, the City argued that it was entitled to summary judgment for several reasons, including that the undisputed

6

evidence established that there was no implied contract between Gibson and the City that obligated the City to provide retiree health benefits. The City maintained that "the language of [the 1982 Ordinance] makes clear that the City did not intend to confer any contractual rights to any specific level of retiree health care reimbursement to any employee . . . ." In support of this contention, the City noted that the 1982 Ordinance states, " 'Health plan coverage for retirees and eligible dependents is *subject to modification* by the City and the provider of health care services, and may be modified periodically as deemed necessary and appropriate.' "

The City also stated that the retiree health benefit had been modified "several times" since its initial enactment in 1982. For example, the City noted that in 1992 "[t]he benefit was not unlimited, but, was rather capped at $2,000/year." In its separate statement of facts, the City stated that the City passed an ordinance (O-17770) in 1992 (the 1992 Ordinance) through which the "maximum amount of the [retiree health benefit] was capped at $2,000/year." The City also requested that the court take judicial notice of the 1992 Ordinance, among other documents. The 1992 Ordinance stated in relevant part, "The absolute maximum premium that will be paid on behalf of a retiree, regardless of actual premium cost, will be $2,000 per year."

7

c.     *The trial court's ruling*

After further briefing and a hearing, the trial court granted the City's motion for summary judgment.[5]  In its order granting the motion, the trial court stated that Gibson "alleges there is an implied contract with the City to provide [Gibson], after retirement, medical insurance on the same basis as then provided to the City's active employees and for the City to pay for the cost of coverage."  The trial court further stated that Gibson had alleged that "[the 1982 Ordinance], codified [the] implied contract," and that the 2011 Ordinance constituted a repudiation and anticipatory breach of the implied contract.

The trial court concluded that the City was entitled to summary judgment on Gibson's breach of implied contract claim for several reasons, including that, in the 1982 Ordinance, the City had reserved the right to modify any implied contract between the parties.[6]  Based on this reservation, the trial court concluded that "there was no implied contract for the level of coverage asserted by [Gibson]."

d.     *Gibson's claims in this court*

In his opening brief, Gibson maintained that the trial court erred in granting judgment as a matter of law in favor of the City on his claim for breach of implied contract.  Gibson argued that "the terms of the parties' implied contract were contained in

---

[5]     In its order granting the City's motion for summary judgment, the trial court also granted the City's request for judicial notice.

[6]     The trial court quoted the reservation language from the 1982 Ordinance that the City relied on in its brief in support of its motion for summary judgment (i.e. " '[h]ealth plan coverage for retirees and eligible dependents is subject to modification by the City and the provider of health care services, and may be modified periodically as deemed necessary and appropriate' ").

(1) Resolution R-255320 [(the 1981 Resolution)], (2) [the 1982 Resolution], and (3) [the 1982 Ordinance]" (collectively "the Initial Legislation").[7]  Gibson contended that there was a triable issue of fact with respect to whether the Initial Legislation contained implied contractual promises that the City would provide a health benefit to Gibson in retirement that is "[e]quivalent to the [h]ealth [i]nsurance [p]rovided to [a]ctive [e]mployees" and that the City would "[p]ay the [p]remiums for [t]hat [b]enefit." (Boldface omitted.)

In his reply brief, Gibson asserted that, "the record demonstrates that [in 1992] in exchange for [certain] . . . [retirement] benefit improvements, certain City employees and retirees *agreed* to [a] $2,000 annual retiree health premium reimbursement cap."  Gibson also stated that the implied contractual promises contained in the Initial Legislation were modified by the 1992 Ordinance, stating, "[P]arties can always modify contractual rights by consent."  Gibson noted that the changes were codified in the 1992 Ordinance.

e.      *This court's request for supplemental briefing*

While this appeal was pending, the court requested that the parties provide supplemental briefing addressing the following question:

> "May this court affirm the trial court's order granting the City's
> motion for summary judgment on Gibson's first amended complaint
> on the ground that any implied contractual promises contained in the
> Initial [Legislation] that the City would provide the same health

---

[7]      Gibson's first amended complaint did not specifically reference the 1981 Resolution, but it did allege that the terms of the implied contract were contained in the two other pieces of legislation forming the Initial Legislation, namely, the 1982 Resolution and the 1982 Ordinance.

9

insurance provided to the City's active employees and would pay for such insurance no longer exist in the wake of the 1992 Ordinance?"

f.    *The parties' responses to our request for supplemental briefing*

In his supplemental brief, Gibson contends that this court may not affirm the summary judgment on the basis of the 1992 Ordinance, for both procedural and substantive reasons. Procedurally, Gibson argues that the trial court's order granting summary judgment may not be affirmed on the basis of the 1992 Ordinance because the City neither raised this ground as an affirmative defense in its answer nor presented the 1992 Ordinance as a ground for granting summary judgment in the trial court.

Substantively, Gibson argues that the 1992 Ordinance cannot serve as a basis for affirming the trial court's order granting judgment as a matter of law for the City on Gibson's breach of implied contract claim because Gibson's first amended complaint sought relief for the City's breach of a *2002 modification* of the Initial Legislation, rather than a breach of implied contractual promises premised on the Initial Legislation. Gibson states that the 2002 modification " 'placed a fixed dollar amount o[n] the Retiree Health Benefit based on the cost of the City-sponsored PPO plan being offered to retirees for the 2003 plan year, with an automatic annual increase in that amount, not to exceed ten percent (10%) per year, based on an independent, objective source—the Centers for Medicare and Medicaid Services, Office of the Actuary, which tracks projected increases in National Health Expenditures.' "

In its supplemental brief, the City argues that this court may affirm the summary judgment on the basis of the 1992 Ordinance. The City maintains that any alleged

10

implied contractual rights contained in the Initial Legislation were modified by the 1992 Ordinance, which imposed "a cap on the amount the City would reimburse an eligible retiree for health insurance premiums." The City further argues that Gibson's "failure to challenge" the modification of any implied contractual promises contained in the Initial Legislation at any time in the 24 years since the enactment of the 1992 Ordinance precludes him from prevailing on a breach of implied contract claim premised on the Initial Legislation.

 2. *Governing law*

  a. *Applicable principles of law governing motions for summary judgment*

Summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant is entitled to summary judgment where the plaintiff cannot establish one or more elements of each of his causes of action, or the defendant has a complete defense to each cause of action. (*Id.*, subd. (p)(2).)

In reviewing a trial court's ruling on a motion for summary judgment, the Court of Appeal applies the de novo standard of review (*Marshall v. County of San Diego* (2015) 238 Cal.App.4th 1095, 1107 (*Marshall*), and makes " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' " (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143.)

A reviewing court " 'will affirm a summary judgment if it is correct on any ground, as we review the judgment, not its rationale.' " (*Marshall*, *supra*, 238 Cal.App.4th at p. 1107.)  In *Noe v. Superior Court* (2015) 237 Cal.App.4th 316 (*Noe*), the Court of Appeal explained that a reviewing court may affirm a grant of summary judgment on a ground not raised in the trial court under the following circumstances:

> "We generally will not consider an argument 'raised in an appeal from a grant of summary judgment . . . if it was not raised below and requires consideration of new factual questions." [Citation.]' [Citations.]  We may, however, consider a newly raised issue 'when [it] involves purely a legal question which rests on an uncontroverted record which could not have been altered by the presentation of additional evidence.' [Citations.]  Even under such circumstances, we will not consider the issue unless 'the opposing party has notice of and an opportunity to respond to that ground.'[8] " (*Id.* at pp. 335-336, fn. omitted.)

Further, "[a]n appellate court must sustain a summary judgment if the trial court's decision is ' ". . . right upon any theory of the law applicable to the case, . . . regardless of the considerations which may have moved the trial court to its conclusion." ' " (*Folberg v. Clara G. R. Kinney Co.* (1980) 104 Cal.App.3d 136, 140.)  That is because "even though the moving party has overlooked the legal significance of a material fact, its existence is nonetheless fatal to the cause of action or defense thereto when the material fact is undisputed and entitles the moving party to judgment as a matter of law." (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 69 (*Juge*).)

---

8       (See also Code Civ. Proc., § 437c, subd. (m)(2) ["Before a reviewing court affirms an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs"].)

b.      *Applicable law governing implied contracts*

In *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52

Cal.4th 1171 (*REAOC*), the Supreme Court outlined the nature of an implied contract:

> "A contract is either express or implied.  [Citation.]  The terms of an
> express contract are stated in words.  [Citation.]  The existence and
> terms of an implied contract are manifested by conduct.  [Citation.]
> The distinction reflects no difference in legal effect but merely in the
> mode of manifesting assent.  [Citation.]  Accordingly, a contract
> implied in fact 'consists of obligations arising from a mutual
> agreement and intent to promise where the agreement and promise
> have not been expressed in words.' "  (*Id.* at p. 1178.)

The *REAOC* court also explained that there is a presumption that legislative acts

do *not* create contractual rights:

> "The judicial determination whether a particular resolution was
> intended to create private contractual or vested rights or merely to
> declare a policy to be pursued until the legislative body shall ordain
> otherwise requires sensitivity to 'the elementary proposition that the
> principal function of a legislature is not to make contracts, but to
> make laws that establish the policy of the [governmental body].
> [Citation.]  Policies, unlike contracts, are inherently subject to
> revision and repeal, and to construe laws as contracts when the
> obligation is not clearly and unequivocally expressed would be to
> limit drastically the essential powers of a legislative body.'
> [Citations.]  'Thus, it is presumed that a statutory scheme is not
> intended to create private contractual or vested rights and a person
> who asserts the creation of a contract with the state has the burden of
> overcoming that presumption.' "  (*REAOC*, *supra*, 52 Cal.4th at pp.
> 1185-1186.)

Thus, "legislation in California may be said to create contractual rights when the

statutory language or circumstances accompanying its passage 'clearly ". . . evince a

legislative intent to create private rights of a contractual nature enforceable against the

[governmental body]." ' "  (*REAOC*, *supra*, 52 Cal.4th at p. 1187.)

13

"The essential elements of a claim of breach of contract, whether express or implied, are the contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and the resulting damages to the plaintiff." (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 439.)

        c.     *The law pertaining to the waiver of contractual obligations*

"Contractual rights are subject to waiver, and waiver may be expressed or implied from the parties' conduct." (*Cinel v. Barna* (2012) 206 Cal.App.4th 1383, 1389.) " ' "California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." ' " (*Old Republic Ins. Co. v. FSR Brokerage, Inc.* (2000) 80 Cal.App.4th 666, 678 (*Old Republic*); accord 13 Williston on Contracts (4th ed. 2015) § 39:27 ["[T]he well-known rule regarding waiver of contractual requirements [is that a] 'party to a contract may by express agreement or by his own course of conduct waive his legal right to insist on strict performance of the covenants of the contract"].) The "issue of waiver [may be decided] as a question of law when the underlying facts are undisputed." (*Old Republic*, *supra*, at p. 679.)

        3.    *Application*

For the reasons discussed below, we conclude that any implied contractual promises contained in the Initial Legislation that the City would provide Gibson a retiree health benefit equivalent to the health insurance provided to the City's active employees and pay the premiums associated with such a benefit, was modified by the 1992 Ordinance, which stated that the City would provide a retiree health benefit to Gibson

14

that was subject to a $2,000 annual health premium reimbursement cap. We further conclude that we may affirm the trial court's order granting the City's motion for summary judgment on the ground that Gibson waived any right to enforce the alleged implied contractual promises contained in the Initial Legislation by failing to raise any challenge to the modification contained in the 1992 Ordinance over a period of approximately 20 years.

     a.     *This court is not procedurally precluded from affirming the trial court's order granting summary judgment for the City based on the 1992 Ordinance*

Preliminarily, we address whether there is any procedural impediment to this court's affirming the summary judgment on the basis of the 1992 Ordinance. We consider three such potential impediments that Gibson raises in his supplemental brief.

First, Gibson notes in his supplemental brief that "summary judgment may not be granted or denied on a ground not raised by the pleadings." In addition, Gibson contends that the City "never alleged . . . as an affirmative defense . . . that Gibson's contractual right to a retiree health benefit was extinguished by the 1992 Ordinance." In its answer, the City alleged "[w]aiver" as an affirmative defense, stating, "[Gibson] has engaged in such conduct and activity that he has waived any right to seek any form or relief against City for the acts alleged in the Complaint." Thus, the City adequately raised the affirmative defense of waiver in its answer. Further, for the reasons discussed in part III.A.3.b., *post*, we conclude that Gibson waived any right to enforce the City's alleged implied contractual promises in the Initial Legislation on which his claim for breach of implied contract in the first amended complaint is based.

15

Next, we consider whether Gibson had an adequate opportunity to respond to the issue of the effect of the 1992 ordinance on his implied contractual claim. As the court in *Noe*, *supra*, 237 Cal.App.4th 316 explained, a reviewing court may affirm a grant of summary judgment on a ground *not* raised in the trial court where the issue " 'involves purely a legal question which rests on an uncontroverted record which could not have been altered by the presentation of additional evidence,' " as long as the " 'opposing party has notice of and an opportunity to respond to that ground.' " (*Id.* at pp. 335-336.) In this case, the effect of the 1992 Ordinance on the enforceability of the alleged implied contractual promises contained in the Initial Legislation presents a legal question that rests on an uncontroverted record,[9] and we have provided Gibson with the opportunity to respond to the issue by way of our request for supplemental briefing.[10] While Gibson asserts in his supplemental brief that if the issue of the effect of the 1992 Ordinance on Gibson's implied contract claim had been raised in the trial court, "[he] would have refuted it," he fails to either present any persuasive legal argument in support of such an assertion or demonstrate that the record could " 'have been altered by the presentation of additional evidence' " (*Noe*, *supra*, at p. 335), if the issue had been raised in the trial

---

[9]    As noted in part III.A.1.a., *ante*, the City's separate statement of facts described the $2,000 premium cap contained in the 1992 Ordinance, and the trial court took judicial notice of the 1992 Ordinance in granting summary judgment. Further, Gibson acknowledged in both his reply brief and his supplemental brief that the 1992 Ordinance constituted a "modification" of any implied contractual obligation, and he also acknowledged in his supplemental brief that "Gibson is among the employees affected by the . . . modification . . . ."

[10]    By providing Gibson with the "opportunity to present [his] views on the issue by submitting [a] supplemental brief[ ]," we have complied with Code of Civil Procedure section 437c, subd. (m)(2).

court.  Under these circumstances, we conclude that Gibson has had an adequate opportunity to respond to the issue of the effect of the 1992 ordinance on his implied contractual claim.  (See *Noe*, *supra*, at pp. 335-336.)

Finally, Gibson argues that we may not affirm the summary judgment on the basis of the 1992 Ordinance because "[a] moving party is not entitled to summary judgment on a ground not raised in its motion, even if that ground would have been sufficient." (Quoting *San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1545 and citing *Juge*, *supra*, 12 Cal.App.4th at p. 67.)  We acknowledge that the City did not move for summary judgment on the basis of the 1992 Ordinance.[11]  However, *Juge*, the case upon which Gibson's argument is premised, states that while a moving party is not *entitled* to summary judgment on a ground not raised by the moving party, summary judgment *may* be granted on the basis of a ground *not* raised by the moving party.  (*Juge*, *supra*, at p. 69.)  Indeed, the *Juge* court expressly held that a "trial court has the inherent power to grant summary judgment on a ground *not explicitly tendered by the moving party* when the parties' separate statements of material facts and the evidence in support thereof demonstrate the absence of a triable issue of material fact put in issue by the pleadings and negate the opponent's claim as a matter of law." (*Id.* at p. 70, italics added.)  In reaching this conclusion, the court reasoned:

---

11    However, the City did contend in its brief in support of its motion for summary judgment that the 1992 Ordinance demonstrated that the retiree health benefit was not "unlimited," and also noted that there had been "numerous changes to the benefit over the years."

17

"To require the trial court to close its eyes to an unmeritorious claim simply because the operative ground entitling the moving party to summary judgment was not specifically tendered by that party would elevate form over substance and would be inconsistent with the purpose of the summary judgment statute. [¶] The summary judgment procedure provides the court and parties with a vehicle to weed the judicial system of an unmeritorious case which otherwise would consume scarce judicial resources and burden the parties with the economic and emotional costs of protracted litigation because the lack of merit is not apparent from the face of the complaint or answer. [Citations]. The procedure permits the court to penetrate the pleadings and ascertain, by means of affidavits, the absence of triable issues of material fact. [Citation.] It is in the public interest, including the court's interest in the efficient and economical administration of justice and the parties' interest in the prompt and affordable resolution of unmeritorious cases, to expeditiously rid the judicial system of a case in which a party is entitled to judgment as a matter of law, without requiring protracted litigation and a trial on the matter." (*Id.* at pp. 69-70.)

In this case, for the reasons discussed below (see pt. III.A.3.b., *post*), we conclude that the parties' separate statements of material facts and the evidence offered in support of these statements demonstrate the absence of a triable issue of material fact with respect to the City's affirmative defense of wavier as a matter of law. Under these circumstances, *Juge* clearly would not have precluded the trial court from granting summary judgment on the basis of the 1992 Ordinance (see *Juge*, *supra*, 12 Cal.App.4th at p. 69), and there is nothing in *Juge* that precludes this court from applying the principles outlined in *Noe* and affirming the trial court's granting of summary judgment on a ground not raised by the City in the trial court.

18

b.      *Gibson waived the right to enforce any implied contractual promises contained in the Initial Legislation*

We assume, strictly for purposes of this opinion, that, upon Gibson's full-time employment with the City in 1986, the City and Gibson entered into an implied contract premised on the Initial Legislation and that this implied contract included a promise that the City would provide eligible retirees a health benefit that is "[e]quivalent to the [h]ealth [i]nsurance [p]rovided to [a]ctive [e]mployees" and would "[p]ay the [p]remiums for [t]hat [b]enefit."[12]  (Boldface omitted.)  However, even assuming the existence of an implied contract containing such terms, it is undisputed that, in 1992, the City adopted an ordinance that stated in relevant part, "The absolute maximum premium that will be paid on behalf of a retiree, regardless of actual premium cost, will be $2,000.00 per year."[13] It is also undisputed that the provision in the 1992 Ordinance establishing a $2,000 annual retiree health premium reimbursement cap constitutes a modification of any implied obligation to provide retirees with health insurance equivalent to that provided to active employees and to pay the premiums for such insurance.[14]  Further, Gibson agrees that he "is among the employees affected by [the 1992 Ordinance]."

Our Supreme Court has instructed courts to " 'proceed cautiously . . . in defining the contours of any contractual obligation' " implied from legislation.  (*REAOC*, *supra*, 52 Cal.4th at p. 1188.)  In this case, the 1992 Ordinance expressly amended "by

[12]     We quote Gibson's brief describing the terms of the alleged implied contract.

[13]     The 1992 Ordinance indicates that this modification was adopted as part of the "meet and confer" process.

[14]     In his reply brief, Gibson stated, with respect to the $2,000 premium cap, "Of course, parties can always modify contractual rights by consent."

19

repealing" the Municipal Code provision in which the Initial Legislation was codified (former San Diego Municipal Code section 24.0907.2). By providing a $2,000 annual retiree health premium reimbursement cap, the 1992 Ordinance clearly and unequivocally altered whatever implied contractual promises existed in the Initial Legislation to provide a retiree health benefit equivalent to the health insurance provided to the City's active employees and to pay the premiums associated with such a benefit.

It is undisputed that Gibson did not attempt to enforce the alleged implied contract terms contained in the Initial Legislation for a period of approximately 20 years after the adoption of the 1992 Ordinance that repealed the Municipal Code provision codifying the Initial Legislation. Under these circumstances, we conclude that, by failing to challenge the City's modification of the implied obligations by way of the 1992 Ordinance for such a lengthy period of time, Gibson waived his right to enforce any implied contractual rights contained in the Initial Legislation, because his " ' "acts are so inconsistent with an intent to enforce the right[s] as to induce a reasonable belief that such right[s] ha[ve] been relinquished." ' " (*Old Republic*, *supra*, 80 Cal.App.4th at p. 678.)[15]

In his supplemental brief, Gibson does not dispute that the 1992 Ordinance modified the alleged implied contractual promises contained in the Initial Legislation in the manner outlined in the previous paragraph, and he does not contend that he ever

_____

15    Our conclusion that Gibson cannot prevail on an implied contract claim premised on purported obligations that were repealed more than 20 years ago is consistent with the Supreme Court's direction that there must be a " 'clear showing' " of implied contractual liability premised on legislation in order to "ensure that neither the governing body nor the public will be blindsided by unexpected obligations." (*REAOC*, *supra*, 52 Cal.4th at pp. 1188-1189.)

20

sought to enforce any implied contractual rights contained in the Initial Legislation prior to his filing of this action. In fact, despite the allegations of the first amended complaint in which Gibson expressly alleged that the terms of an implied contract were premised on *the Initial Legislation* (see part III.A.1.a.), in his supplemental brief, Gibson claims that we may not affirm the summary judgment on the basis of the 1992 Ordinance because his breach of implied contract claim "sought relief for the City's breach of the *2002 third modification* of the Initial Contract." (Italics added, boldface omitted.) This argument fails for two reasons. First, as described in part III.A.1.a., *ante*, Gibson's breach of implied contract claim was clearly premised on alleged contractual promises contained in the *Initial Legislation*, "to provide Gibson and those similarly situated, after retirement from the City, medical insurance on the same basis as then provided to the City's active employees," and "to pay for the cost of the coverage provided."[16] Thus, we reject Gibson's contention that his first amended complaint raised a claim for breach of implied contract premised on the *2002 modification* rather than the *Initial Legislation*. Second, while Gibson contends in his supplemental brief that his implied contract claim is premised on the 2002 modification, he does not contend that the 2002 modification contains the promises of premium parity with active employees and full premium payment that form the basis of the implied contract cause of action contained in the first amended complaint.

---

[16] In his briefing on appeal, Gibson repeatedly argues that his implied contract claim is based on terms contained in the Initial Legislation. For example, Gibson maintained that "the terms of the parties' implied contract were contained in (1) [the 1981 Resolution], (2) [the 1982 Resolution], and (3) [the 1982 Ordinance]."

Accordingly, we conclude that the record demonstrates that the City established its affirmative defense of waiver to Gibson's breach of implied contract claim as a matter of law, and that the trial court therefore properly granted the City's motion for summary judgment.

B.      *The trial court did not err in sustaining the City's demurrer with leave to amend only to state a cause of action for breach of implied contract*

Gibson contends that the trial court erred in sustaining the City's demurrer to his original complaint with leave to amend only to state a cause of action for breach of implied contract. Gibson correctly maintains that, "by permitting Gibson to allege only a cause of action for breach of an *implied* contract [citation], the trial court effectively denied Gibson leave to amend any of his three alleged causes of action for declaratory relief, mandamus, and breach of express contract." Accordingly, we must consider whether the trial court properly sustained the City's demurrer to his claims for declaratory relief, mandamus, and breach of express contract *without* leave to amend.

1.      *The law governing review of an order sustaining a demurrer without leave to amend*

In *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, the court outlined the following well-established law governing the review of an order sustaining a demurrer without leave to amend:

> "A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed. [Citation.] When a demurrer is sustained without leave to amend, 'we decide whether there is a

22

reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' (*Ibid.*) Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action. (*Ibid.*)" (*Id.* at pp. 1608-1609, fn. omitted.)

2. *Gibson's complaint did not properly state a cause of action for breach of express contract and he has not demonstrated that he could amend his complaint to state such a cause of action*

   a. *Gibson's complaint*

As in his first amended complaint, Gibson's original complaint alleged that City employees relied on the City's promise of lifetime health insurance in approving the City's withdrawal from the Social Security system. Gibson also alleged that the City adopted the retiree health benefit in 1982 in order to reimburse retired City employees for the cost of health insurance premiums that they would have to pay after retirement in lieu of benefits that City employees would otherwise have received pursuant to the Social Security program.

Gibson's complaint contained the following allegations pertaining to the Initial Legislation establishing the retiree health benefit:

> " '[The 1982 Resolution], set the parameters of the [Retiree] Health Benefit.' [Citation.] 'Certain benefits were "provided to employees in lieu of Social Security participation." ' [Citation.] 'In addition, it was the City Council's intent "to provide such coverage as a *permanent* benefit to eligible retirees." ' [Citation.] 'The City Manager was authorized to establish a City-sponsored Group Health Insurance Plan for eligible retirees, providing the same choice of program coverage as offered to active employees of the City.' [Citation.] In fact, [the 1982 Resolution] stated: 'it is the intent of this Council to provide such coverage as a permanent benefit for eligible retirees.' [¶] . . . 'On June 1, 1982, [the 1982 Ordinance],

23

codified the [Retiree] Health Benefit.' " (Italics added by the complaint.)

Gibson's complaint also contained a series of "class action allegations" through which he alleged that the action presented numerous questions of law and fact common to the proposed class including, "Is the Retiree Health Benefit a vested, constitutionally-protected, contractual right that may not be unilaterally impaired by City ordinance?"

In a breach of contract cause of action, Gibson alleged:

"Gibson and those similarly situated entered into a contract under which, according to its legal intendment and effect, the City agreed to provide the Retiree Health Benefit in exchange for Gibson and those similarly situated forfeiting their legal rights to Social Security benefits, agreeing to become a City employee, and serving the public during their employment."

b.      *Governing law*

As noted previously (see pt. III.A.1.b., *ante*), in order to state a claim for breach of contract, a plaintiff must allege, among other elements, "the existence of the contract." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) "If the action is based on alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference." (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307.)

c.      *Application*

In its order sustaining the City's demurrer, the trial court stated, "[Gibson's] breach of contract claim fails because there is no contract pled and no contract terms pled." We agree. While the original complaint quoted various provisions contained in the Initial Legislation, it did not allege that there was an express written agreement between Gibson

24

and the City pursuant to which the City agreed to provide a retirement benefit outlined in the Initial Legislation in exchange for Gibson's labor. Thus, Gibson failed to state a claim for breach of express contract. Further, Gibson did not argue in the trial court or demonstrate on appeal that he could allege that there is a written agreement between the City and Gibson pursuant to which the City agreed to provide the retiree health benefit contained in the Initial Legislation and that Gibson agreed to provide labor in exchange for such benefit. In addition, while Gibson's original complaint also did not adequately allege breach of an *implied* contract, because it did not specifically allege the manner by which the provisions contained in the Initial Legislation formed the basis of an implied contract (as did the paragraphs in the first amended complaint quoted in part III.A.1., *ante*), the trial court granted Gibson leave to amend to adequately allege a claim of breach of implied contract.

Accordingly, we conclude that the trial court did not err in sustaining the City's demurrer with leave to amend only to state a cause of action for breach of implied contract.

3. *Gibson's complaint did not properly state claims for declaratory relief or mandamus and he has not demonstrated that he could amend his complaint to state such claims*

Gibson's declaratory relief and mandamus claims were premised on allegations that the City violated both the contracts clauses of the federal and state constitutions (U.S.

25

Const., art I, § 10, cl. 1; Cal. Const., art I, § 9) and San Diego Municipal Code former section 24.0103 (section 24.0103).[17]

We concluded in part III.B.2., *ante*, that Gibson's complaint did not properly state a cause of action for breach of express contract because he failed to adequately allege the existence of an express contract between himself and the City and he has not demonstrated that he could amend the complaint to identify such a contract. Because Gibson failed to adequately allege the existence of an express contract with the City, or to demonstrate that he could amend his complaint to state such a claim, Gibson has failed to state a cause of action for declaratory relief or mandamus premised on the impairment of an express contract under the contracts clauses of the federal and state constitutions (U.S. Const., art I, § 10, cl. 1; Cal. Const., art I, § 9).[18] (Cf. *Board of Administration v. Wilson*

---

[17]  Gibson's cause of action for declaratory relief stated in relevant part:

> "Gibson contends . . . that [the 2011 Ordinance] is invalid because:
> (a) it violates the contracts clauses of both the federal and state
> constitutions (U.S. Const., art I, § 10, cl. 1; Cal. Const., art I, § 9); and
> (b) it violates . . . section 24.0103."

Gibson's mandamus claim stated in relevant part:

> "The City's October 18, 2011 adoption of [the 2011 Ordinance] . . .
> was unlawful because [the 2011 Ordinance]:
> (a) violates the contracts clauses of both the federal and state
> constitutions (U.S. Const., art I, § 10, cl. 1; Cal. Const., art I, § 9); and
> (b) violates . . . section 24.0103."

[18]  To the extent that Gibson could have adequately *alleged* a declaratory relief or mandamus cause of action based on the impairment of an *implied* contract under the contracts clauses of the federal and state constitutions (U.S. Const. art I, § 10, cl. 1; Cal. Const. art I, § 9), any error in sustaining the City's demurrer without leave to amend was harmless in light of our conclusion that the trial court's order granting the City's motion for summary judgment on Gibson's breach of implied contract claim may be affirmed for

26

(1997) 52 Cal.App.4th 1109, 1130 ["The contract clauses of the federal and state Constitutions limit the power of a state to modify its own *contracts* with other parties," italics added].)

Gibson also failed to adequately state a claim for declaratory relief or mandamus based on an alleged violation of section 24.0103. Section 24.0103 contains a series of definitions applicable to the City of San Diego's employee retirement system. Among the definitions contained in section 24.0103 is the following:

> " 'Deferred Member' means any Member who leaves his or her employee contributions on deposit with the Retirement System after terminating City or contracting agency service. *When a Deferred Member applies for retirement benefits, he or she is entitled, when eligible, for the retirement benefits in effect on the day the Deferred Member terminates City or contracting agency service and leaves his or her contributions on deposit with the Retirement System.*" (Italics altered.)

Gibson claims that the italicized portion of the definition of "Deferred Member" granted him a "statutory right" to the receipt of the City's retirement health benefit in effect in 2006 when he terminated his employment with the City.

We are required to interpret statutes in context and in a common sense manner. (See *Doe v. Brown* (2009) 177 Cal.App.4th 408, 417-418.) Section 24.0103 is plainly a

---

the reasons stated in part III.A., *ante*. (See *Thompson v. Halvonik* (1995) 36 Cal.App.4th 657, 664 [stating that when a grant of summary judgment demonstrates plaintiff cannot establish an element of a cause of action, any error by the trial court in sustaining a demurrer to related cause of action containing same element as summarily adjudicated claim is deemed harmless].)

definitional statute.[19]  "The normal reason for the definition of a term in a body of legislation is that certain provisions elsewhere in the enactment use the term defined and the definition clarifies the term's meaning as thus used."  (*Disabled & Blind Action Committee of Cal. v. Jenkins* (1974) 44 Cal.App.3d 74, 81-82.)  Thus, rather than evincing a legislative intent to create a new substantive right prescribing a certain level of retirement benefits for deferred members (*Pebworth v. Workers' Comp. Appeals Bd.* (2004) 116 Cal.App.4th 913, 918 [" 'a statute is "substantive" when it " 'imposes a new or additional liability and substantially affects existing rights and obligations,' " ' "]), the context in which the italicized text appears in the Municipal Code demonstrates that the language in question is merely a portion of the definition of the term Deferred Member "for purposes of this Article."  (§ 24.0103.)  We therefore conclude that Gibson did not, and cannot, state a claim for declaratory relief or mandamus based on an alleged violation of section 24.0103.[20]

Accordingly, we conclude that the trial court did not err in sustaining the City's demurrer with leave to amend only to state a cause of action for breach of implied contract.[21]

---

[19]    Section 24.0103 states, "Unless otherwise stated, for purposes of this Article:," and provides a list of defined terms beginning with "Accumulated Additional Contributions," and ending with "Unmodified Service Retirement Allowance."  (Italics omitted.)

[20]    Gibson contends that he could amend his complaint to state a direct claim for relief based on section 24.0103, on the same theory addressed in the text.  We conclude that such amendment would not adequately state a cause of action, for the reasons stated in the text.

[21]    Gibson contends that the trial court abused its discretion in limiting its grant of leave to amend to permit Gibson to state only a cause of action for breach of implied

IV.

DISPOSITION

The order granting the City's motion for summary judgment and the order sustaining the City's demurrer with leave to amend to state a cause of action for implied contract are affirmed.  The judgment is affirmed.


AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

---

contract.  We conclude in the text that Gibson failed to establish that the trial court erred in sustaining the City's demurrer without leave to amend with respect to Gibson's claims for declaratory relief, writ of mandate, and breach of express contract.  Gibson has not identified in his brief on appeal any additional causes of action that he could have adequately stated.  Accordingly, Gibson has not carried his burden of demonstrating how he could amend his complaint to state a cause of action.  (See, e.g., *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 ["The burden of proving . . . [a] reasonable possibility [of amendment of a complaint] is squarely on the plaintiff"].)