Filed 6/27/24  Langley v. Superior Court CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MORGAN LANGLEY,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent;<br><br>PROMOTE MEXICO, LLC, et al.,<br><br>Real Parties in Interest. | B333431<br><br>(Los Angeles County Super. Ct. No. 19STCV28457) |

ORIGINAL PROCEEDINGS in mandate.  Bruce G. Iwasaki, Judge.  Petition granted.

Bordin Semmer, Joshua Bordin-Wosk, Christopher Blanchard and Bryan C. Swaim for Petitioner.

No appearance for Respondent.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall, John D. Alessio, Sean M. Sullivan and Zagros S. Bassirian for Real Parties in Interest.

———————————————

Morgan Langley petitions for a writ of mandate challenging a grant of summary adjudication in favor of real parties in interest Promote Mexico, LLC (Promote Mexico) and Roger Norman.  The trial court ruled a release signed by Langley in advance of the 2018 Baja 1000 off-road race imposed a duty to defend Promote Mexico and Norman from the claims of Magda Angel, a spokesmodel for Monster Energy Company (Monster) whom Langley allegedly struck with his race vehicle.

We hold the trial court erred in granting summary adjudication.  As an initial matter, although there are some apparent inconsistencies in the trial court's written ruling, we conclude the trial court intended to limit its grant of summary adjudication to the issue of Langley's duty to defend Promote Mexico.  As to that issue, the language of the release requires Langley to defend Promote Mexico and Norman from actions, claims, demands, and so forth that Langley or specified individuals affiliated with him "have."  It is undisputed that Angel is not one of the specified individuals affiliated with Langley.  Her claims, therefore, are not claims that Langley and his affiliated individuals "have," and Langley owes no duty to defend Promote Mexico and Norman against them.

Accordingly, we grant Langley's writ petition.

# BACKGROUND

## 1.    *Release and indemnification agreement*

Promote Mexico promotes the Baja 1000 race.  In advance
of that race in 2018, Langley signed a document entitled "General
Waiver, Release, Consent and Indemnification Agreement"
(underscoring & some capitalization omitted).  We will refer to
this document as the "release."  Promote Mexico and its officers,
directors, managers, employees, shareholders, and members are
among the "Releasees" identified in the release.

Section 2 of the release, entitled "Acknowledgement of
Ultrahazardous Activity" (underscoring omitted), states, "I
understand, acknowledge and am aware that off-road racing may
be a dangerous activity in which a participant could suffer
serious bodily, psychological, and neurological injury or death or
cause injury to another's person or property."  The section then
provides a nonexclusive but detailed list of "possible risks" in
off-road racing.

Section 4, entitled "Assumption of Risk" (underscoring
omitted), states, "I PERSONALLY AND VOLUNTARILY
ASSUME ALL INHERENT RISKS, WHETHER FORESEEN OR
UNFORESEEN, IN CONNECTION WITH MY PARTICIPATION
IN THE EVENT[ ] AND RELATED ACTIVITIES FOR ANY
LOSS, DAMAGE, HARM, OR INJURY, INCLUDING
PARALYSIS OR DEATH, THAT MAY BEFALL ME OR MY
PROPERTY WHILE I AM PARTICIPATING IN THE EVENT
AND RELATED ACTIVITIES, INCLUDING THE RISK OF
NEGLIGENCE OF ANY PARTY OR PARTICIPANT,
INCLUDING THE RELEASEES . . . ."  (Boldface omitted).

Section 5 of the release is entitled "Release/Indemnity"
(underscoring omitted).  Paragraph 5(A) states, in relevant part,

3

"I hereby agree that I, my assigns, spouse, heirs, beneficiaries, agents, guardians, legal representatives, team members, staff, family and individuals affiliated with my race efforts will not make any claim against, sue, or attach the property of . . . Promote Mexico [and the other Releasees] for any injury or damage resulting from the negligence or other acts, howsoever caused, by any of the Releasees as a result of my participation in the Event and Related Activities, associated functions and use of the facilities. I hereby agree to release, discharge, defend, indemnify and hold Releasees harmless from all liability, actions, claims, demands, charges, expenses, attorney's fees of any nature that I, my assignees, spouse, heirs, beneficiaries, agents, guardians, legal representatives, team members, staff, family and individuals affiliated with my race efforts now have or may hereafter have for injury or damage resulting from, related to or connected with my participation in the Event and Related Activities, associated functions and use of the facilities."

## 2. *Complaint and cross-complaints*

On August 12, 2019, Angel filed a complaint alleging a vehicle driven by Langley had struck her at the 2018 Baja 1000 race. Angel alleged that at the time of the accident she was working at the race as a spokesmodel for Monster. She named as defendants Monster, Langley, and two entities affiliated with Langley, COPS Racing, LLC and Langley Productions, Inc. Angel later amended her complaint to add Promote Mexico and its alleged owner, Roger Norman, alleging they promoted and organized the Baja 1000 race (hereafter we will refer to Promote Mexico and Norman collectively as Promote Mexico).

Competing cross-complaints were filed with Promote Mexico on one side and Langley, COPS Racing, and Langley

Productions on the other. Monster also filed a cross-complaint against Promote Mexico and Langley and his entities and was named as a cross-defendant in the cross-complaints filed by those defendants.

Promote Mexico's cross-complaint asserted seven causes of action; only the first two are relevant to this writ proceeding. Under the first cause of action, Promote Mexico alleged that pursuant to the release signed by Langley, Langley and his entities were obliged to defend and indemnify Promote Mexico against Angel's claims. The second cause of action alleged Langley and his entities had breached the release by not fulfilling those defense and indemnity obligations and by cross-complaining against Promote Mexico.

Langley and his entities' cross-complaint asserted six causes of action against Promote Mexico. The first sought implied indemnity, alleging Langley and his entities were not at fault for Angel's injuries, and therefore were "entitled to be indemnified" by Promote Mexico. The second cause of action, for contribution and indemnity, and third cause of action, for declaratory relief, sought a judicial determination of the proportionate responsibility of the various defendants in the event Angel obtained a judgment or settlement. The fourth through sixth causes of action, asserted by Langley but not COPS Racing and Langley Productions, alleged a breach of duty to defend and indemnify arising from Promote Mexico's implied promise to provide Langley with insurance coverage in exchange for his registration fees and participation in the race.

Monster's cross-complaint asserted causes of action for, inter alia, indemnity under various theories and breach of contract.

### 3. *Motion for summary adjudication*

Promote Mexico moved for summary judgment or summary adjudication of Promote Mexico's cross-complaint as to Langley and his entities and Langley's and his entities' cross-complaint as to Promote Mexico. The motion identified nine issues for summary adjudication by the trial court. Issue 1 was whether Langley and his entities had a duty to defend Promote Mexico. Issues 2 through 4 sought judgment in Promote Mexico's favor on Langley's and his entities' first through third causes of action for implied indemnity, indemnity and contribution, and declaratory relief, respectively. Issues 5 through 7 sought judgment in Promote Mexico's favor on Langley's causes of action arising from Promote Mexico's alleged implied promise to provide insurance coverage. Issues 8 and 9 requested judgment in Promote Mexico's favor on its causes of action for express indemnity and breach of contract against Langley and his entities.

As to Issues 1 through 4 and 8 and 9, Promote Mexico argued the release obligated Langley and his entities to defend and indemnify Promote Mexico from Angel's claims, and also barred Langley and his entities from asserting claims against Promote Mexico for equitable indemnity, contribution, and declaratory relief.

As to Issues 5 through 7, Promote Mexico argued the insurance coverage to which Langley allegedly was entitled excluded damages incurred outside the official racecourse, and the allegations and evidence indicated Angel sustained her injuries in an area before the start line and thus outside the racetrack.

Langley and his entities opposed. They argued Langley Productions was not a party to the release and therefore had no

6

duties under it. As for Langley and COPS Racing, they contended paragraph 5(A) of the release required defense and indemnity only of claims brought by Langley and those affiliated with him, not of third-party claims such as Angel's personal injury lawsuit. On the insurance issues, Langley argued there was a factual dispute as to whether the accident took place on or off the racecourse, and therefore summary adjudication was not appropriate.

Langley and the entities did not expressly address Promote Mexico's contention that the release barred Langley and the entities from asserting their own cross-complaint against Promote Mexico for indemnity, contribution, and declaratory relief. Rather, Langley and the entities appeared to have folded that issue into their argument that the release did not apply to third-party claims. They concluded that argument by requesting the trial court rule against Promote Mexico on Issues 1 through 4 and 8 and 9, a request that encompassed Promote Mexico's challenges to Langley's and the entities' cross-complaint.

Although not raised in the opposition itself, in responding to Promote Mexico's separate statement of material facts, Langley and the entities disputed that Langley had signed the release on behalf of COPS Racing, or that Promote Mexico had met its burden to show that COPS Racing was party to the release.

In reply, Promote Mexico argued Langley's signature on the release was sufficient to bind COPS Racing, which owned Langley's race team, and Langley Productions, Langley's production company. Promote Mexico reasserted its contention that paragraph 5(A) of the release barred Langley's and the entities' cross-complaint and obliged them to defend and

7

indemnify Promote Mexico. Promote Mexico noted the opposition was "silent as to Mr. Langley and COPS Racing's breach of the covenant not to sue [by bringing their cross-complaint], conceding the issue." Promote Mexico further argued the allegations and evidence established the accident occurred in a staging area, whereas the insurance policy covered accidents only on the racecourse itself.

4. ***Trial court's ruling***

Following hearing, the trial court adopted as its final order a written tentative ruling granting in part and denying in part Promote Mexico's motion.

The trial court found, "[T]he motion for summary adjudication of the duty to indemnify is premature and must be denied." The court, quoting arguments raised by Langley and his entities, stated, " '[T]he duty to indemnify does not arise until liability is proven' [citation]," and Promote Mexico " 'has not shown that liability has been proven so as to trigger any indemnity obligation . . . .' [Citation.]" As for Promote Mexico's assertion that Langley and the entities "violated their duty not to sue," the court found, "This issue was not properly raised and briefed in the moving papers and, therefore, cannot no[w] be raised for the first time in reply." The court continued, "Thus, the motion [for] summary adjudication based on the duty to indemnify is denied."

The trial court next stated, "Only the issue of the duty to defend remains on this motion." As to that issue, the court found Promote Mexico failed to show COPS Racing and Langley Productions were bound by the release, which the evidence indicated Langley had signed as an individual, not as a representative of those entities.

8

As to Langley, the trial court found he had a duty to defend Promote Mexico under the following language of the release's paragraph 5(A): "I hereby agree to . . . defend, indemnify and hold Releasees harmless from all liability, actions, claims, demands, charges, expenses, attorney's fees of any nature that I . . . now have or may hereafter have for injury or damage resulting from, related to or connected with my participation in the Event and Related Activities, associated functions and use of the facilities."

The trial court rejected Langley's argument that the above language applies only to claims brought by Langley himself, reasoning that "[a] promise to defend the releasee—Promote Mexico—only arises when there is a third party making a claim against Promote Mexico." The court quoted case law that " '[i]ndemnification agreements ordinarily relate to third party claims,' " and noted Langley had not "identif[ied] any legal authority where a duty to defend and indemnify excluded third party claims and *only* applied to direct claims between the parties to the contract."

The trial court wrote, "The language [of the release] is not a model of elegance, but to interpret this provision as excluding third party claims requires ignoring the promise to 'defend' Promote Mexico," and "renders" the covenant not to sue "superfluous." "[W]here there is a covenant not to sue Promote Mexico for Morgan Langley's claims, there would be no need to further include a duty on Langley to indemnify and defend for solely Morgan Langley's claims. Thus, the only reasonable interpretation of this provision is that it necessarily includes third party claims 'related to or connected with [Langley's] participation in the Event and Related Activities.' [¶] Thus,

9

Promote Mexico's motion for summary adjudication of Issues nos. 1–4, and 8–9 is granted solely as to cross-defendant Morgan Langley."

The trial court denied summary adjudication on Issues 5 through 7, pertaining to Langley's insurance-based claims, finding there was a triable issue of material fact as to whether the location of the accident was " 'outside of the official course of the event.' "

The trial court concluded, "Promote Mexico's motion for summary judgment is denied. The motion for summary adjudication is granted as to Morgan Langley on Issues 1–4, 8, and 9, and otherwise denied."

Langley then filed the instant writ petition challenging the grant of summary adjudication. We issued an order to show cause and received briefing from the parties.

## PROPRIETY OF WRIT REVIEW

Under Code of Civil Procedure 437c, subdivision (m)(1), a party may challenge an order granting summary adjudication through petition for a peremptory writ, although " 'writ review is deemed extraordinary and appellate courts normally are reluctant to grant it.' " (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 323.) Writ review is appropriate when, inter alia, the order granting summary adjudication "disposes of a large and important portion of the case and intervention by writ will substantially simplify future proceedings." (*Quidel Corp. v. Superior Court* (2020) 57 Cal.App.5th 155, 163.)

Resolving Langley's challenge on writ review, rather than awaiting judgment and appeal, will substantially simplify future proceedings. The multiple competing cross-complaints for defense and indemnity in the underlying action have led to

10

multiple motions for summary adjudication and multiple rulings on the duty to defend.  One of those rulings, which found Promote Mexico has a duty to defend Monster, is before us on appeal in case No. B328413.[1]  Another ruling denying summary adjudication as to Monster's duty to defend Promote Mexico is before us on writ review in case No. B332617, and we have issued an order to show cause.  Because we must resolve Promote Mexico's appeal against Monster now, it is preferable that we also resolve Langley's and Promote Mexico's writ petitions, so the parties know their respective defense responsibilities to one another going forward.

## STANDARD OF REVIEW

" 'A motion for summary judgment or summary adjudication is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." '  [Citations.]  We review a ruling on summary judgment or summary adjudication de novo and 'decide independently whether the facts not subject to triable dispute warrant judgment for the moving party or a determination a cause of action has no merit as a matter of law.'  [Citation.]  In so doing, we liberally construe the evidence in favor of the party opposing the motion and resolve all doubts concerning the evidence in their favor." (*Campbell v. FPI Management, Inc.* (2024) 98 Cal.App.5th 1151, 1161.)

---

[1] The grant of summary adjudication in favor of Monster was immediately appealable because it included a payment order. (See *Watts Industries, Inc. v. Zurich American Ins. Co.* (2004) 121 Cal.App.4th 1029, 1038.)

11

Agreements providing for indemnity and defense as a general matter are "construed under the same rules as govern the interpretation of other contracts.  Effect is to be given to the parties' mutual intent [citation], as ascertained from the contract's language if it is clear and explicit [citation].  Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense." (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 552.)  In a noninsurance agreement, however, "if one seeks . . . to be indemnified for his or her own active negligence, or regardless of the indemnitor's fault[,] . . . language on that point must be particularly clear and explicit, and will be construed strictly against the indemnitee." (*Ibid.*)

## DISCUSSION

### A.      The Grant of Summary Adjudication Is Limited to the Duty To Defend

As an initial matter, there are some apparent inconsistencies in the trial court's order granting summary adjudication that arguably confuse the issues upon which the court ruled.  We requested supplemental briefing from the parties as to how to address these potential inconsistencies.  For the reasons that follow, we conclude the trial court intended to grant summary adjudication solely as to Langley's duty to defend Promote Mexico.

As summarized in our Background, *ante*, the trial court first ruled that issues regarding indemnity were premature, as Angel had yet to establish any party's liability.  The court further ruled that Promote Mexico had not properly raised the issue of Langley's and his entities' alleged breach of the covenant not to

12

sue. The court denied summary adjudication on the issue of indemnity, and stated, "Only the issue of the duty to defend remains on this motion." After concluding Langley owed a duty to defend to Promote Mexico, the court stated it was granting summary adjudication as to Issues 1 through 4 and 8 and 9 in Promote Mexico's motion for summary adjudication.

The grant of summary adjudication on these issues is confusing given the trial court's statements earlier in the written order indicating it was granting summary adjudication solely as to the duty to defend. Issue 1 concerns Langley's duty to defend Promote Mexico, but the other issues either do not pertain to the duty to defend or pertain to the duty to defend only in part. As summarized in our Background, Issues 2 through 4 concern Langley's claims for implied indemnity and contribution from Promote Mexico. Issue 8 pertains to Promote Mexico's cause of action for express indemnity, which alleges, inter alia, Langley has a duty to defend but also a duty to indemnify respondents. Issue 9 pertains to Promote Mexico's cause of action alleging breach of contract on two bases—first, Langley's making a claim against and suing Promote Mexico in breach of the covenant not to sue, and second, Langley's failing to indemnify and defend Promote Mexico.

Our Supreme Court has provided the following guidance to resolve inconsistencies in the record: " ' "It may be said . . . as a general rule that when, as in this case, the record is in conflict it will be harmonized if possible; but where this is not possible that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation]." ' " (*People v. Beltran* (2013) 56 Cal.4th 935, 945, fn. 7, quoting *People v. Smith* (1983) 33 Cal.3d 596, 599.) Although this

13

guidance typically is applied when two different documents within the record are in conflict—for example the clerk's transcript and the reporter's transcript (see *Beltran*, at p. 945, fn. 7)—we can conceive of no reason not to follow it to resolve conflicts within a single document as well.

To harmonize the trial court's statements earlier in the written order with its grant of summary adjudication on Issues 2 through 4 and 8 and 9, we must presume the trial court intended to grant summary adjudication on those issues only insofar as they implicate Langley's duty to defend. That is the only plausible reading, because the trial court's analysis offers no basis to support summary adjudication on the issues of indemnity and breach of the covenant not to sue. Indeed, the trial court stated that it was ruling against Promote Mexico on those issues on procedural grounds and deciding only the duty to defend.

Alternatively, if the order cannot be read to harmonize the language in this manner, we must give greater credence to the court's findings supported by reasoned explanation than the unexplained grant of summary adjudication on issues unrelated to the duty to defend, which the trial court identified only by number.

In sum, we construe the order to grant summary adjudication only as to Langley's duty to defend. We express no opinion on the court's rulings as to indemnity and the covenant not to sue, which rulings were in Langley's favor for procedural reasons and therefore are not before us in the writ proceeding.

Promote Mexico argues in its supplemental brief the trial court did, in fact rule, on Langley's breach of the covenant not to sue. Promote Mexico contends the trial court based its findings regarding the duty to defend in part on the covenant not to sue,

14

because the trial court concluded that if the duty to defend applied only to Langley's claims against Promote Mexico, then the covenant not to sue would be superfluous. The trial court's acknowledgement that the release contains a covenant not to sue, however, does not constitute a finding that Langley breached that covenant. Again, the trial court expressly declined to rule on the issue of breach of that covenant, finding Promote Mexico had not raised it properly.

Promote Mexico further contends the trial court in its oral statements during the summary adjudication hearing "clarified the apparent inconsistency in its tentative ruling." At the hearing, Promote Mexico's counsel disputed the trial court's tentative finding that Promote Mexico had not addressed the covenant not to sue in its moving papers, and asked for clarification whether "the court's saying there is no covenant not to sue or the court's saying there was." The trial court responded, "The court is saying there was a covenant not to sue, but that's all included in this exhibit that's called All-Inclusive General Waiver[,] Release, Consent, and Indemnification Agreement, as the court finds it applies to Morgan Langley." After a further question from Promote Mexico's counsel, the court went on, "[T]here's a release indemnity clause in this document that's called General Waiver Release Consent. The court reads a covenant not to sue is part of that document also."

Again, these statements by the trial court merely acknowledge the release contains a covenant not to sue. The statements do not constitute a finding that Langley breached that covenant.

Promote Mexico argues it did raise the breach of the covenant not to sue in its moving papers and at the hearing, and

therefore it was "consistent" for the trial court to grant summary adjudication on Issues 2 through 4, which implicated that covenant. Promote Mexico notes we may affirm the trial court on any legal theory, regardless of the correctness of the trial court's stated grounds. (See *Troche v. Daley* (1990) 217 Cal.App.3d 403, 407–408.)

As discussed, the trial court's order cannot be read to grant summary adjudication on the breach of the covenant not to sue, because the trial court expressly stated Promote Mexico had not raised the issue properly, and that the only issue left to decide was the duty to defend. We cannot, in the guise of affirming the trial court on alternative grounds, reverse an express ruling by the trial court.

## B. The Release Does Not Impose a Duty on Langley To Defend Promote Mexico From Angel's Claims

We disagree with the trial court that the release requires Langley to defend Promote Mexico from Angel's claims.

The language upon which the trial court and Promote Mexico rely to impose a duty to defend is the second sentence of paragraph 5(A) of the release: "I hereby agree to release, discharge, defend, indemnify and hold Releasees harmless from all liability, actions, claims, demands, charges, expenses, attorney's fees of any nature that I, my assignees, spouse, heirs, beneficiaries, agents, guardians, legal representatives, team members, staff, family and individuals affiliated with my race efforts now have or may hereafter have for injury or damage resulting from, related to or connected with my participation in the Event and Related Activities, associated functions and use of the facilities." We will refer to this sentence as the defense and indemnity clause.

16

Construed using the language relevant to the circumstances of the instant case, the clause reads, "[Langley] hereby agree[s] to . . . defend . . . [Promote Mexico] from all liability, actions, claims, demands, charges, expenses, attorney's fees of any nature that [Langley and specified individuals affiliated with him] . . . have . . . for injury or damage resulting from, related to or connected with [Langley's] participation in the [Baja 1000 Race]."

This language does not require Langley to defend Promote Mexico from *all* claims for injury or damage resulting from his participation in the race.  Rather, it requires defense (and indemnity and release) only of "liability, actions, claims, demands, charges, expenses, [and] attorney's fees" that Langley and the listed affiliated individuals "have."  On its face, therefore, the defense and indemnity clause appears intended to require release, indemnification, and defense of claims brought by Langley and the listed affiliated individuals for injury or damage resulting from Langley's participation in the race.

Promote Mexico does not contend, nor did the trial court find, that Angel qualifies as one of the affiliated individuals listed in the defense and indemnity clause.  That is, there is no dispute that Angel is not Langley's "assignee[ ], spouse, heir[ ], beneficiar[y], agent[ ], guardian[ ], legal representative[ ], team member[ ], staff, family [or] individual[ ] affiliated with [Langley's] race efforts."  The only way the defense and indemnity clause would require Langley to defend Promote Mexico from Angel's claims, therefore, is if the language can be construed to encompass not only claims that Langley and the listed affiliated individuals "have," but also claims of third parties unaffiliated with Langley.

17

The language does not allow such a construction. Again, the defense and indemnity clause is limited to "liability, actions, claims, demands, charges, expenses, [and] attorney's fees" that Langley and affiliated individuals "have." Grammatically, Langley does not "have" Angel's "actions, claims, [or] demands"— rather, Angel has "actions, claims, [or] demands" against Langley and Promote Mexico. To the extent Angel is entitled to "charges, expenses [or] attorney's fees," Langley does not "have" that entitlement either, which belongs to Angel. These terms cannot be read as extending to third parties unaffiliated with Langley. Thus, Promote Mexico's argument that Angel's "actions" and "claims" are enough to trigger the defense and indemnity clause fails.

The one remaining term for which Langley promised a defense is "liability." Arguably, as a matter of grammar "liability" is something Langley can "have" as to third parties such as Angel. We nonetheless do not read "liability" in the context of the defense and indemnity clause to require Langley to defend Promote Mexico from claims by third parties unaffiliated with Langley, because doing so puts that word at odds with the other language in the clause.

As discussed, the other terms for which Langley has promised release, indemnity, and defense—"actions, claims, demands, charges, expenses [or] attorney's fees"—cannot be construed as applying to third parties unaffiliated with Langley given the language limiting those terms to those Langley and affiliated individuals "have." Under the principle of *noscitur a sociss*, " 'a word takes its meaning from the company it keeps [citation],' " and " 'courts will adopt a restrictive meaning of a listed item if acceptance of a broader meaning . . . would

18

otherwise make the item markedly dissimilar to other items in the list.' [Citation.]" (*DeMarinis v. Heritage Bank of Commerce* (2023) 98 Cal.App.5th 776, 791.)  To read "liability" to extend to unaffiliated third-party claims, when all other terms are limited to claims brought by Langley and affiliated individuals, would make "liability" markedly dissimilar to the other terms.  Put another way, we cannot read the term "liability" by itself to extend the defense obligation to unaffiliated third-party claims when all other language in the clause limits the defense obligation to the claims of Langley and affiliated individuals.

In sum, the language of the defense and indemnity clause indicates an intent to shield Promote Mexico from certain claims brought by Langley and affiliated individuals, not to obligate Langley to defend Promote Mexico from third-party claims such as Angel's.

In reaching the opposite conclusion, the trial court noted the release, in addition to the defense and indemnity clause, "contains a covenant not to sue Promote Mexico for Morgan Langley's claims," referring to the first sentence of paragraph 5(A) in which Langley agreed that he and the listed affiliated individuals "will not make any claim against" or "sue" Promote Mexico for injury or damage resulting from the race.  The court reasoned, "[W]here there is a covenant not to sue Promote Mexico for Morgan Langley's claims, there would be no need to further include a duty on Langley to indemnify and defend for solely Morgan Langley's claims."  According to the trial court, to read the defense and indemnity clause to apply solely to Langley's claims "ignore[s] the promise to 'defend' Promote Mexico," and renders the covenant not to sue "superfluous."

19

The trial court's reasoning overlooks that the defense and indemnity clause applies not just to claims Langley himself has, but also those of the individuals listed in the defense and indemnity clause, i.e., Langley's "assignees, spouse, heirs, beneficiaries, agents, guardians, legal representatives, team members, staff, family and individuals affiliated with my race efforts."  Through that language, Langley is releasing his own claims against Promote Mexico, but also promising to defend and indemnify Promote Mexico should any of the other listed individuals bring claims.

Limiting the defense and indemnity obligation to claims brought by Langley and those affiliated with him does not render the covenant not to sue surplusage.  Although the covenant not to sue purports to bind the same individuals listed in the defense and indemnity clause, Promote Mexico offers no authority that Langley has the power to bind every individual on that expansive list.  (3 Cal. Affirmative Def. (2d ed. 2023) § 42.1 ["The parties signing the release must be those empowered by law to release the right in question."].)  Thus, to ensure full protection from claims brought not only by Langley but also by individuals affiliated with him, Promote Mexico would need not only a covenant not to sue, but also Langley's promise to hold Promote Mexico harmless and defend it from the claims of affiliated individuals not bound by the covenant not to sue.  The promise to defend remains salient despite the covenant not to sue.

Also in support of its finding of a duty to defend, the trial court quoted the following from *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949:  "A clause which contains the words 'indemnify' and 'hold harmless' is an indemnity clause which generally obligates the indemnitor to

20

reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons.  [Citation.] Indemnification agreements ordinarily relate to third party claims." (*Id.* at p. 969.)  The trial court then stated, " '[T]his general rule does not apply if the parties to a contract use the term 'indemnity' to include direct liability as well as third party liability,' " quoting *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 555.[2]  The trial court noted Langley had not "identif[ied] any legal authority where a duty to defend and indemnify excluded third party claims and *only* applied to direct claims between the parties to the contract."

The trial court's reasoning is based on the false premise the duty to defend and indemnify under the release applies only to "direct claims between the parties to the contract," in this case Langley and Promote Mexico.  As we have explained, the release is not limited solely to direct claims by Langley, but also requires Langley to defend Promote Mexico from *some* third-party claims, specifically those brought by the listed individuals affiliated with Langley, such as his spouse, family, staff, and others affiliated with his race efforts.  Thus, "indemnify" and "hold harmless" as used in the release *are* used in their ordinary sense of relating to third-party claims.  The release simply limits the scope of third-party coverage, restricting it to claims brought by a defined set of individuals affiliated with Langley rather than all third-party claims.  Because Angel does not fall within that defined set of

---

**2** Promote Mexico cites *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 600 and *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1023, which are in accord with the principles quoted by the trial court from *Meyer Building Industries* and *Dream Theater*, respectively.

individuals, Langley has no duty to defend Promote Mexico from her claims.

In its return, Promote Mexico appears to suggest Langley also owes a duty to defend Promote Mexico from Monster's cross-complaint. Promote Mexico made no such argument in its briefing below—the trial court correctly characterized Promote Mexico as arguing the release "gives rise to a duty owed by [Langley] to defend Promote Mexico against Plaintiff's [i.e., Angel's] claims arising from the Event," without mention of any obligations regarding Monster's claims. Regardless, Langley has no duty under the release to defend Promote Mexico from Monster's claims for the same reasons Langley has no duty to defend Promote Mexico from Angel's claims.

## DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing the trial court to 1) vacate its order granting in part Promote Mexico, LLC's and Roger Norman's motion for summary adjudication and 2) enter an order denying the motion. Morgan Langley shall recover his costs with regard to this writ proceeding.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.                                    WEINGART, J.

22